32 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
Rolando SORIANO, Defendant-Appellant/Cross-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Manuel BRINGAS-BELTRAN, Defendant-Appellant.
 Nos. 93-10525, 93-10550 and 93-10526.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1994.
Decided July 27, 1994.
 
 Before: CHOY, LEAVY and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 I. Soriano's appeal.
 
 
 3
 Soriano appeals his conviction arguing that he was entrapped as a matter of law by Ming, a government informant. Although Ming's persistence certainly raised a serious jury question, we cannot conclude that Soriano was entrapped as a matter of law, under the test in United States v. Davis, 15 F.3d 902, 907-08 (9th Cir.1994).
 
 
 4
 If the jury believed Soriano's testimony, and drew no adverse inferences against him from the facts and testimony of other witnesses, then absence of predisposition would be well established. But they did not have to believe him and draw only favorable inferences. The jury could have disbelieved Soriano and drawn adverse inferences.
 
 
 5
 The jury could infer readiness to commit the crime from the fact that Soriano returned Ming's phone calls, and told Ming he would consider the narcotics deal instead of rejecting it outright. The jury could interpret his role in the drug negotiations with McConnell as leadership rather than mere translation. This inference could arise because Soriano looked at the cash and then summoned Bringas. McConnell testified that:
 
 
 6
 He asked me if I wanted to meet another guy who could sell cocaine. I asked him why would I want to meet another guy; "Is the quality that Mr. Beltran sells no good?" He says, "no." It's just another guy you can do business with if Juanito [Bringas-Beltran] happens to be dry or something.
 
 
 7
 If the jury believed this testimony, they could infer that Soriano was active in the cocaine business independently of this particular transaction. Soriano's statement to McConnell that he wanted to be around for the first three or four transactions to "make sure all parties were comfortable with each other in doing these deals" could be taken to imply that this was not a onetime deal with Ming. Soriano said after his arrest, "McConnell, you moved too fast ... you could have gotten a big load off of this guy." The jury could infer that he was active in the business, not just pressured into a single transaction by Ming. The jury was entitled to believe that the government just offered Soriano an opportunity to do what he otherwise would have done.
 
 
 8
 This case is different from United States v. Skarie, 971 F.2d 317 (9th Cir.1992), because there were no threats against Soriano and his own statements could be understood to show him to be a willing participant in the drug sales.
 
 
 9
 The judge did not abuse his discretion in refusing to instruct the jury as Soriano urged regarding inferences to be drawn from his prior conviction. Soriano asked for this instruction:
 
 
 10
 A prior conviction for selling or conspiring to sell drugs isn't sufficient without other evidence to demonstrate predisposition.
 
 
 11
 But it was argumentative. The judge's instruction defining entrapment was not objected to, and it sufficiently set out what the government had to prove beyond a reasonable doubt. The government's case for predisposition did not rely entirely on the prior conviction, despite the emphasis on it in final argument.
 
 
 12
 Any danger of an inappropriate inference by the jury was cured by the judge's instruction restricting the inferences which the jury could draw from the prior conviction. The judge instructed the jury that the prior could be considered only insofar as it might bear on Soriano's believability, not "as evidence of guilt of the crime." This instruction embraced the limitation which Soriano wanted the court to impose on inferences which could be drawn from the prior. We cannot conclude that "the jury instructions as a whole are misleading or inadequate to guide the jury's deliberations." United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991).
 
 
 13
 II. The Government's Cross-Appeal of Soriano's sentence.
 
 
 14
 We do not reach the statutory or constitutional questions raised by Soriano with respect to the government's appeal of his sentence. The district court did not err in sentencing Soriano according to the calculation in the presentence report, because the government did not file a timely objection pursuant to the local rule. Special order # 76 of the District of Nevada provides:
 
 
 15
 DISPUTES WITH PRESENTENCE REPORT.
 
 
 16
 5. In the event significant conflicts remain unresolved, at least five (5) days prior to the date set for the imposition of sentence, counsel shall file the original and two copies of written objections with the Clerk of Court. A copy of said objections shall be served immediately upon the United States Probation Office and upon opposing counsel. Opposing counsel and the United States Probation Office shall file the original and two copies of their written response to the objections at least three (3) days before sentencing.
 
 
 17
 This rule provides notice to the defendant, necessary for preparation for the sentencing proceeding. It also provides the probation officer with an opportunity to correct the sentencing computation or explain why the objection is not well taken. It gives the judge an opportunity to read and consider these materials and prepare adequately for the sentencing proceeding. The prosecutor's telephone call to defense counsel the night before sentencing, and same-day filing of the objection, did not comply with the rule or satisfy its legitimate purposes.
 
 
 18
 The government neither objects to applicability of this rule nor offers any justification for noncompliance. The service issue under 21 U.S.C. Sec. 851(a)(1) was serious, see United States v. Carvajal-Minota, 706 F.Supp. 726 (N.D.Cal.1989), and a response would have been important to the court had the probation officer's computation been timely put at issue.
 
 
 19
 III. Bringas-Beltran's appeal.
 
 
 20
 It is a close question whether the district court made a finding of fact on whether Bringas conspired to sell ten kilos or two. We cannot simply infer from the sentence an entirely unstated finding. The district judge must first make the factual determinations, then apply the sentencing guidelines to see what sentence is required on those facts. Federal Rule of Criminal Procedure 32(c)(3)(D) requires a district court to make a finding on every factual dispute relevant to sentencing. "The district court satisfies the above requirement by adopting the conclusions in the PSR." United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990). The district judge did not say expressly whether Bringas conspired to sell ten kilos or two. He just said "I'm going to adopt the calculations of the sentencing guidelines ... [as recommended] by the probation officer," with stated exceptions.
 
 
 21
 "The district court must make its resolution of all disputed matters clear on the record." United States v. Upshaw, 918 F.2d 789, 792 (9th Cir.1990). But we shall not remand for an empty formality if it is clear from the record that the judge must have been resolving the factual issue. Here the parties had just been arguing about whether Bringas conspired to sell ten kilos of cocaine or two. Bringas's lawyer had argued for two, the prosecutor for ten. The judge cut off the government's argument as unnecessary, saying "You don't have to rehash the entire case. I heard it at trial."
 
 
 22
 In this context, when the judge made his terse announcement of his decision, he must have meant that based on the evidence at trial, he found that Bringas conspired to sell ten kilograms. We cannot tell this from his words alone, and the record would be better if we could. Nevertheless, when the judge's words are considered in context, he must have been deciding on the ten or two kilo issue. That is what the lawyers had just been arguing about.
 
 
 23
 The judge's attribution of a ten kilo conspiracy to Bringas was not clearly erroneous. Bringas's own remark to the DEA undercover agent as they left the restaurant was evidence of a ten kilogram conspiracy. Agent McConnell testified about a conversation with Bringas: "He goes, 'After this one' he goes 'five, maybe five--no maybe ten, surely five,' some statement to that sense, where I could buy five kilos for sure if he couldn't bring the ten." The amount of money was evidence of an ability to provide about seven kilograms. Soriano said that McConnell "could have gotten a big load off this guy," referring to Bringas. The judge could infer by a preponderance of the evidence that Bringas and Soriano were cooperating with regard to the ten kilo negotiation.
 
 
 24
 We do not determine whether the record supported an upward departure on Bringas, because the district court did not depart. His sentence of 120 months was reached by applying the guidelines, based on the probation officer's calculation for a ten kilo conspiracy. It was not a departure.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3. The parties are familiar with the facts, and we will not restate them here