**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Horst Werner JOETZKI, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lawrence Carl GISNER, Defendant–
Appellant.**

**Nos. 90–10312, 90–10350.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1991.

Decided Dec. 19, 1991.

Jeffrey D. Ross, Budoff & Ross, Emmet J. Ronan, Henze, Ronan & Clark, Phoenix, Ariz., for defendants-appellants.

Stephen W. Laramore, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before ALARCON, BOOCHEVER and T.G. NELSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

Horst Werner Joetzki and Lawrence Carl Gisner appeal their convictions for mail fraud, wire fraud, and aiding and abetting, in violation of 18 U.S.C. sections 1341, 1343, and 2. They contend that the court improperly admitted prejudicial evidence concerning a bizarre method of refining gold, denied a severance motion, and refused requested jury instructions. They also challenge their sentences under the Sentencing Guidelines, contending that the court improperly calculated the amount of loss on which their sentences were based and improperly sentenced Gisner to a term exceeding the statutory maximum. We affirm in part, but vacate Gisner's sentence and remand for resentencing.

## BACKGROUND

Joetzki and Gisner were the principals of S.D.T. International. Gisner handled the finances, and Joetzki oversaw the enterprise's gold refining operation. The refining process, by which gold was "recovered" from ore, produced bars with virtually no commercial value.

Around December 11, 1987, Gisner and Joetzki opened a "cash management account" with Merrill Lynch in the name of S.D.T. International. On February 2, 1988, Merrill Lynch closed the account, which had never been credited with any funds, upon receiving a $20,000 check written against the account. Merrill Lynch immediately informed both Joetzki and Gisner of the closure and told them not to write any more checks. Gisner assured Merrill Lynch he was wiring a $100,000 deposit. Shortly thereafter, Merrill Lynch received a $7,900 wire deposit. No other funds were ever deposited into the account.

During January and February 1988, Joetzki and Gisner issued 34 checks on the account, totaling approximately $5.4 million. Merrill Lynch called both Joetzki and Gisner almost daily to insist that they stop writing checks on the account. Joetzki and Gisner repeatedly assured Merrill Lynch that money was forthcoming. Aside from the $7,900 wire deposit, however, no money ever arrived.

A jury found Joetzki and Gisner guilty of four counts of mail fraud and six counts of wire fraud each. The district court sentenced Joetzki to 51 months and Gisner to 65 months imprisonment.

## DISCUSSION

### I. *Admission of Evidence Regarding the Gold Refining Process*

Joetzki and Gisner argue that the district court improperly admitted testimony concerning the unusual role women employees played in the gold refining process devised by Joetzki. They maintain that because of the bizarre sexual overtones of the evidence, its prejudicial effect outweighed its probative value under Fed.R.Evid. 403.

Corina Ruottinen, a lab technician at the gold refining plant, testified that the women employed as "lab technicians" were to observe the "pour" of melted ore into bars. Joetzki instructed the women not to wear any undergarments from the waist down and directed them to concentrate on him during the pour. In addition, the women were to collect their urine at the plant, to be added to the melted ore. Joetzki's theory was that such measures would increase the amount of gold recovered.

■ We review decisions under Rule 403 for abuse of discretion. *United States v. Kessi*, 868 F.2d 1097, 1107 (9th Cir.1989). The district court has "wide latitude" in determining the admissibility of evidence under Rule 403, *United States v. Kinslow*, 860 F.2d 963, 968 (9th Cir.1988), *cert. denied*, 493 U.S. 829, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989), and its decision is accorded considerable deference. *United States v. Layton*, 855 F.2d 1388, 1402 (9th Cir. 1988), *cert. denied*, 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

■ Lack of fraudulent intent was the primary defense Joetzki and Gisner advanced at trial. They argued that their enterprise was legitimate and that they intended to make good on the checks written on the Merrill Lynch account. A person who writes a check with the reasonable expectation that sufficient funds will be available by the time it clears the bank lacks the requisite fraudulent intent for conviction of mail or wire fraud. *U.S. v. Unruh*, 855 F.2d 1363, 1373 (9th Cir.1987), *cert. denied*, 488 U.S. 974, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988); *Williams v. United States*, 278 F.2d 535, 537 (9th Cir.1960). This defense opened the door to introduction of evidence relevant to the legitimacy of the gold refining enterprise. The testimony concerning the role women played in the gold refining process had relevance in establishing that the enterprise was a sham operation which could not reasonably be expected to yield funds to cover the checks. It was thus probative of fraudulent intent.

Under Rule 403 a court has discretion to exclude relevant evidence that is unfairly prejudicial, that is, if it has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented on the crime charged. Fed.R.Evid. 403, Advisory Committee's Note; *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir.1980); *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir.1985). While the evidence was bizarre, given the defense advanced by Joetzki and Gisner, the court did not abuse its discretion in deciding that its probative value as to fraudulent intent outweighed its prejudicial effect.

## II. *Gisner's Motions for Severance and Mistrial*

Gisner argues that Ruottinen's testimony was so highly prejudicial to him in particular as to require a severance of the trial. We disagree and find no error in the court's denial of Gisner's severance motion and of his subsequent motion for mistrial.

■ We review motions to sever and motions for mistrial for abuse of discretion. *United States v. Unruh*, 855 F.2d at 1374; *United States v. Segal*, 852 F.2d 1152, 1155 (9th Cir.1988). A defendant who seeks reversal of a severance motion has the burden of proving clear, manifest, or undue prejudice from a joint trial. *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). The evidence of prejudice must demonstrate that the defendant was denied a fair trial. *United States v. Conners*, 825 F.2d 1384, 1391 (9th Cir. 1987). A defendant seeking severance based on the "spillover" effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge. *United States v. Candoli*, 870 F.2d 496, 510 (9th Cir.1989).

■ Gisner has failed to carry his burden under these standards. First, the record shows that Gisner was aware of the unorthodox refining process Joetzki used. Accordingly, the evidence concerning the process was relevant to prove his fraudulent intent. Second, the judge gave an appropriate limiting instruction to the jury,

directing them to consider separately the evidence presented against each defendant. Third, because the record contains overwhelming evidence of Gisner's guilt, any prejudice stemming from the evidence was harmless and did not amount to denial of a fair trial.

### III. *Jury Instructions*

 Joetzki and Gisner challenge the district court's rejection of three proposed jury instructions. We review the district court's formulation of jury instructions for abuse of discretion. *United States v. Kessi*, 868 F.2d 1097, 1101 (9th Cir.1989). Our inquiry is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberations. *Id.* A defendant is entitled to jury instructions on the theory of defense. *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir.1990). If the court rejects the defendant's proposed instructions, we review the instructions actually given *de novo* to determine if they adequately covered the defense theory. *Id.*

 Proposed instruction 8 states that use of the mails and wires must be "for the purpose of executing the fraudulent scheme, and not merely as a result of such scheme." This instruction does not relate to intent, and thus the court's rejection does not constitute a refusal to instruct on the defense theory. Moreover, the instruction given on this point was not misleading. The court instructed the jury that the use of the mails and wires must be "part of the plan or scheme." This is an accurate statement of the law. *See Schmuck v. United States*, 489 U.S. 705, 712, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989) (mailing need not be essential to fraudulent scheme to be part of it); *United States v. Louderman*, 576 F.2d 1383, 1387 n. 3 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978) (wire fraud).

 Proposed instruction 9 deals with the required temporal relationship between the scheme and the mailings or wire communications:

Mailings or wire communications which take place after the object of the scheme or plan has been accomplished or before the scheme or plan has begun are not sufficiently related to the scheme or plan to support either a mail fraud or wire fraud conviction.

Joetzki and Gisner assert that this instruction was essential because the government introduced evidence concerning business and financial dealings that took place before the "commencement of the scheme" alleged in the indictment. This evidence, however, was introduced to show an overall fraudulent intent while the proposed instruction deals with the element of use of the mails and wires. The instruction requiring the jury to find that the use of the mails and wires must be part of the scheme or plan adequately limited the jury's consideration of this evidence. We therefore find no error.

Joetzki and Gisner also argue that proposed instruction 9 was necessary because of the time lag between the opening of the Merrill Lynch account and the writing of bad checks. They apparently refer to their defense at trial that they had no fraudulent intent in opening the Merrill Lynch account. Under this theory, the scheme would not have begun until the bad checks were passed, and thus the use of the mails which occurred before this point (Counts I, II, and III) was not illegal.

The court's instruction that the use of the mail must be part of the fraudulent scheme also adequately covered this defense. The question is whether the jury, had it determined that the scheme did not begin until Joetzki and Gisner began writing the bad checks, would have had adequate guidance to find that the use of the mails before this point was not a part of the scheme. While the proposed instruction might have clarified the point, it was not error to reject it. Even imperfect jury instructions will not form the basis for reversing a conviction unless they constitute an abuse of discretion. *United States v. Bordallo*, 857 F.2d 519, 527 (9th Cir. 1988), *amended* 872 F.2d 334, *cert. denied*, 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989).

Finally, proposed instruction 10 merely contains an alternative definition of intent to defraud: the contemplation of "some actual harm or injury" to the alleged victims. The court's instruction that the government had to prove that the defendants "acted with intent to defraud" did not constitute a refusal to instruct on the defense theory. The instructions given were sufficient to guide the jury in its deliberations.

In sum, we find no error in the court's rejection of the three proposed instructions.

## IV. *Calculation of Amount of Loss in Sentencing*

Joetzki and Gisner challenge the court's inclusion of a $5 million check written on insufficient funds in calculating the amount of "loss" for an upward adjustment of the base offense level under section 2F1.1(b)(1) of the Sentencing Guidelines. They argue that the government failed to carry its burden of establishing that the check represented a loss because (1) it presented no evidence that an actual loss was sustained because Merrill Lynch refused to honor the check and (2) the check was so "obviously fraudulent" that it should have been excluded from the computation.

We examine the district court's legal interpretations of the Guidelines *de novo*. *United States v. Stewart*, 926 F.2d 899, 900 (9th Cir.1991). We review factual determinations underlying the sentence determination, on the other hand, for clear error, giving due deference to the court's application of the Guidelines to the facts. *United States v. Howard*, 894 F.2d 1085, 1087 (9th Cir.1990). When the government seeks an upward adjustment of the offense level under the Sentencing Guidelines, it bears the burden of proving by a preponderance of the evidence the facts supporting the upward adjustment. *Id.* at 1090 & n. 4 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986) and *United States v.*

*Fernandez–Vidana*, 857 F.2d 673, 675 (9th Cir.1988)).

We reject the argument that only actual losses may be included in calculating the offense level, for the Guidelines contemplate intended as well as actual losses in the definition of "loss." United States Sentencing Commission, *Guidelines Manual* [hereafter U.S.S.G.] § 2F1.1 comment 7 (Nov.1988).[1] Thus, to base an upward adjustment on a "loss," the government has the burden of establishing only that the defendant attempted to inflict the loss. *See United States v. Wills*, 881 F.2d 823, 827 (9th Cir.1989). The government has clearly done so here. The $5 million check, introduced into evidence as Exhibit 18, shows Joetzki's signature on the front and the endorsement of several banks on the back. Gisner was informed of all the checks Joetzki signed. Testimony established that the check had made its way for payment to the bank handling Merrill Lynch's check transactions and that there were no funds in the account to honor the check. Thus, the government met its burden of showing that Joetzki and Gisner intended to inflict a $5 million loss by attempting to pass the check.

We find no merit in the argument that because the government presented no evidence that "anyone took it seriously," the check should not have been included in computing the total loss. A comment to section 2F1.1 notes that the total dollar loss may overstate the seriousness of the offense when "an instrument ... was so obviously fraudulent that no one would seriously consider honoring it.... In such instances, a downward *departure* may be warranted." U.S.S.G. § 2F1.1 comment 10 (emphasis added). This comment, however, does not deal with whether a check should be included in the computation of total loss for purposes of adjusting the base offense level. Rather, it accords the court discretion to depart downward from the pre-

---

**1.** We cite to the 1988 version of the Guidelines because it is the version of the Guidelines the court applied in sentencing Joetzki and Gisner. The parties do not dispute the court's use of the 1988 Guidelines. Moreover, no substantive changes relevant to our discussion here have been made to § 2F1.1 or its commentary by subsequent amendments.

scribed sentence once it adjusts the offense level based on the total loss.

■■■■ "Adjustments" and "departures" are distinctly different concepts under the Guidelines. Adjustments are changes to an offense level within the Guidelines. *See generally* U.S.S.G., Ch. 3. Departures, on the other hand, are sentences imposed outside the Guidelines. *See* U.S.S.G. §§ Ch. 1, Pt. A, 4(b), 5K2.0. The government bears the burden of proof only with regard to upward adjustments. Moreover, we have held that a court's discretionary decision not to depart downward from an applicable guideline is not reviewable on appeal.[2] *United States v. Morales*, 898 F.2d 99, 102–03 (9th Cir.1990). The district court's rejection of the defense request to disregard the $5 million check in sentencing was a discretionary decision not to depart downward, and as such, is beyond our review.

### V. *Gisner's 65–Month Sentence*

Gisner contends that the court erred in sentencing him to 65 months imprisonment. He argues that his sentences on four counts of mail fraud and six counts of wire fraud run concurrently because the court did not order consecutive sentences. He seeks a reduction of his sentence to 60 months, the statutory maximum for each count.

■■■■ The Guidelines' basic approach to sentencing for multiple counts that involve the same course of conduct is to impose incremental penalties. *See* 28 U.S.C. § 994(*l*)(1) (1988). The Guidelines determine a combined sentence for multiple counts based on the calculation of a "combined offense level." *See* U.S.S.G. §§ 3D1.1–3D1.5. *See generally U.S. v. Brady*, 928 F.2d 844, 849 (9th Cir.1991) (discussing sentencing calculations on mul-

tiple count convictions). The combined offense level, in conjunction with a numerical category reflecting the defendant's criminal history, yields a sentencing range from which the court is to select an appropriate sentence. *See* U.S.S.G. § 3D1.5; Ch. 5, part A (Sentencing Table). In Gisner's case, the resulting sentencing range was 57 to 71 months, from which the court chose a sentence of 65 months.

■■■■ The Guidelines determine whether combined sentences on multiple counts run concurrently or consecutively according to the relationship between the sentence chosen from the appropriate sentencing range, called the "total punishment," and the maximum sentence for the count that carries the highest statutory maximum. If the total punishment the court imposes is less than or equal to the highest statutory maximum, the sentences on all counts are to run concurrently. U.S.S.G. § 5G1.2(c). If the total punishment exceeds the highest statutory maximum, the sentences are to run consecutively "to the extent necessary to produce a combined sentence equal to the total punishment." § U.S.S.G. 5G1.2(d). Under the Guidelines, therefore, consecutive sentences on multiple counts may overlap.

■■■■ Gisner's total punishment of 65 months exceeded the statutory maximum for mail and wire fraud, each count of which carries a maximum sentence of five years, or 60 months.[3] 18 U.S.C. §§ 1341, 1343. In sentencing Gisner, the court did not specify whether or to what extent the sentences on the various counts were to run consecutively. The government would have us examine the sentence solely in the light of the Sentencing Guidelines, arguing that the court implicitly ordered consecutive sentences to the extent necessary to total 65 months imprisonment.

**2.** While we have no jurisdiction to review a court's discretionary decision not to depart downward, we will review a court's decision that it lacks discretion to do so. *United States v. Martin*, 938 F.2d 162, 163 (9th Cir.1991); *United States v. Cook*, 938 F.2d 149, 152 (9th Cir.1991). It is not argued here that the court believed it lacked discretion to make a downward departure in sentencing.

**3.** The fraudulent scheme for which Gisner was convicted took place from December 1987 to February 1988, before the August 1989 amendment of 18 U.S.C. § 1343 which provided for a maximum penalty of 30 years when the fraud affects a financial institution. Therefore, we do not consider this provision in our analysis.

We reject this reading of the federal sentencing scheme. The multiple sentencing provisions of the Guidelines must be read in conjunction with the requirements of 18 U.S.C. section 3584, which states in relevant part:

(a) ... Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively....

(b) ... The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

18 U.S.C. § 3584 (1988). The Guidelines define the type of overlapping sentence involved here as a sentence that runs consecutively. We also construe it as a consecutive sentence subject to the requirements of section 3584.

A review of the legislative history indicates that the multiple count sentencing provisions of the Guidelines were meant to complement, not supplant, section 3584. *See United States v. Wills*, 881 F.2d 823, 827 (9th Cir.1989) (discussing interplay between section 3584 and the Guidelines in light of legislative history). Section 3584 was enacted as part of the same comprehensive legislation that authorized the Sentencing Commission to promulgate sentencing guidelines and specifically outlined an incremental approach to sentencing on multiple counts. Comprehensive Crime Control Act of 1984, P.L. 98–473, 98 Stat. 1837, 2000–01 (enacting 18 U.S.C. § 3584), 2019–20 (enacting 28 U.S.C. § 994) (1984).

This federal sentencing scheme for multiple counts, which includes both 28 U.S.C. section 994(*l*) and 18 U.S.C. section 3584, was designed to lead to "carefully considered determinations as to the appropriateness of concurrent, consecutive, or overlapping sentences in cases of multiple offenses." S.Rep. No. 225, 98th Cong., 2d Sess. 165 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3348. The purpose of section 3584 indicates that in making such "carefully considered determinations" courts must clarify at sentencing that a sentence exceeding the statutory maximum runs consecutively:

[Section 3584(a)] is intended to be used as a rule of construction [where] the court is silent as to whether sentences are consecutive or concurrent, in order to avoid litigation on the subject. However, the [Senate Judiciary] Committee hopes that the courts will attempt to avoid the need for such a rule by specifying whether a sentence is to be served concurrently or consecutively.

S.Rep. No. 225 at 127, *reprinted in* 1984 U.S.C.C.A.N. at 3310.

■■ To summarize, to the extent that the length of the sentence imposed on multiple counts exceeds the maximum of the count carrying the highest statutory maximum, the Guidelines prescribe a consecutive or overlapping sentence. Under these circumstances 18 U.S.C. section 3584 additionally directs that, unless the applicable statute mandates consecutive sentences, the court is to order the terms to run consecutively to the extent necessary. Here, neither the mail fraud nor the wire fraud statute mandates consecutive sentences. Accordingly, when it imposed a sentence exceeding the 60–month statutory limit in Gisner's case, the court should have ordered the sentences to run consecutively, overlapping to total 65 months.

Requiring the court expressly to order consecutive sentences when the Guidelines themselves contemplate consecutive sentences is more than a mere formalism, as it is possible that one or more counts might be reversed on appeal. Reversal of a count on which a consecutive sentence has been imposed has different consequences from reversal of a count which resulted in a concurrent sentence. Because 18 U.S.C. section 3584(a) demands a specific and express order when sentences imposed at the same time run consecutively, we remand for resentencing in light of the requirements of 18 U.S.C. section 3584(a) and (b).

AFFIRMED in part, VACATED and REMANDED in part.