UNITED STATES of America,
Plaintiff–Appellee,

v.

CARPENTER'S GOLDFISH FARM,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Marvin CARPENTER, Defendant–
Appellant.

Nos. 92–10342, 92–10343.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Decided July 8, 1993.

---

Robert A. Giovacchini, Fresno, CA, for defendants-appellants.

Donald W. Searles, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Before: FLETCHER, REINHARDT and NOONAN, Circuit Judges

NOONAN, Circuit Judge:

Marvin Carpenter was found by this court to have been wrongly convicted under the Lacey Act, 16 U.S.C. § 3372, and his case was remanded for sentencing for the other offenses he had committed. *United States v.*

*Carpenter,* 933 F.2d 748, 752 (9th Cir.1991). He now appeals his new sentence. We reverse and remand for resentencing.

## PROCEEDINGS

Carpenter was convicted of making a false statement to the United States Fish and Wildlife Service (the Service) in violation of 18 U.S.C. § 1001; of killing migratory birds in violation of the Migratory Bird Treaty Act, 16 U.S.C. §§ 703, 707(a); and of violating the Lacey Act, 16 U.S.C. § 3372, 3373(d)(2) by "acquiring migratory birds killed in violation of federal law." *Id.* at 749.

The probation office calculated Carpenter's sentence under § 2Q2.1 of the Sentencing Guidelines. This section is headed: "Specially Protected Fish, Wildlife, and Plants; Smuggling and Otherwise Unlawfully Dealing in Fish, Wildlife, and Plants." Its Commentary gives as the relevant statutory provisions, inter alia, 16 U.S.C. § 707(b). Its Background states: "This section applies to violations of the Endangered Species Act, the Bald Eagle Protection Act, the Migratory Bird Treaty, the Marine Mammal Protection Act, the Wild Free–Roaming Horses and Burros Act, the Fur Seal Act, the Lacey Act, and to violations of 18 U.S.C. § 545 where the smuggling activity involved fish, wildlife [and/or] plants." The probation office began with a base offense level of 2; added 2 points for the defendant's commercial purpose; 4 points for his being an organizer or leader of a criminal activity that involved 5 or more participants; and 2 points for obstruction of the investigation. No credit was given for acceptance of responsibility. The guideline range was 10 to 16 months. The probation office recommended a sentence of 13 months and a fine of $12,500. The court followed the recommendation.

On appeal to this court, the convictions of violating the Lacey Act, 16 U.S.C. § 3372, were reversed. *Carpenter,* 933 F.2d at 751. We declined to pass on Carpenter's other challenges to the sentence he had received, stating:

As his Lacey Act convictions, which were Class A misdemeanors, have been reversed, the district court should have the

opportunity to resentence him. We assume that having been successful on his appeal he will not receive a more severe sentence under the Migratory Bird Treaty Act, in terms of which his offenses are Class B misdemeanors, 16 U.S.C. § 707(a) (1988), than he received under the Lacey Act. A new presentence report and a new sentencing hearing· should be had.

*Id.* at 752.

On remand the probation office calculated Carpenter's sentence under § 2F1.1 of the Guidelines, a section entitled "Fraud and Deceit." The probation office now recommended that Carpenter be given credit for acceptance of responsibility and no upward adjustment either for his role in the offense or his obstruction of justice. The probation office's report determined that the applicable sentencing range was 0 to 6 months, and 3 months was recommended. The government objected to the probation report. The district court responded to these objections only by finding that Carpenter should. be sentenced under· § 2Q2.1.

The third presentence report, following the court's order, calculated the sentence under § 2Q2.1 with a base offense level of 6; 2 points for Carpenter's commercial purpose; 4 points for his role in the offense; 2 points for obstruction of justice; and no adjustment for acceptance of responsibility. The result was a level of 14, resulting in a guideline sentencing range of 15 to 21 months—obviously "a more severe sentence" than Carpenter had received before he appealed to this court.

The defendant objected and the district court responded on April 28, 1992 with "Findings of Fact," in which the court again concluded that he should be sentenced under § 2Q2.1. The court stated that the background section of § 2Q2.1 made these guidelines "applicable to *all* violations of the Migratory Bird Treaty" (emphasis in original).

A hearing was held by the district court on May 4, 1992. The court there stated that the offense level under § 2Q2.1 was 6, to which it added 2 points for a commercial enterprise and 4 points for Carpenter's role in the offense. The court then reduced the level 2 points for his acceptance of responsibility,

giving a total of 10. The defense objected that the section of the Migratory Bird Act under which Carpenter was convicted was 16 U.S.C. § 707(a) and the Guidelines referred only to 16 U.S.C. § 707(b). The court stated its belief that the commentary embraced "an area larger than the sections cited."

With a sentencing guideline level of 10 the range for sentencing was 6 to 12 months. The court sentenced Carpenter to 12 months for violation of the False Statement Act, 18 U.S.C. § 1001, and gave him concurrent terms of three months. each on the misdemeanor counts of violating the Migratory Bird Treaty Act, 16 U.S.C. §§ 703, 707(a). The court imposed a fine of $7,750.

Carpenter appeals.

### ANALYSIS.

We review application of the Guidelines de novo. *United States v. Kohl,* 972 F.2d 294, 297 (9th Cir.1992). Directed by 18 U.S.C. § 3742(f) (1988), we must first decide if the district court erred in ordering Carpenter's sentence calculated under § 2Q2.1. *See United States v. Rodriguez–Razo,* 962. F.2d 1418, 1420 (9th Cir.1992). An error, of course, may be harmless and not require remand if it "did not affect the district court's choice of the sentence imposed." *Id.* If, however, remand is necessary, the district court should be given appropriate instructions.

The district court sentenced Carpenter under § 2Q2.1. This section applies only to the *felony portion* of the Migratory Bird Treaty, 16 U.S.C. 707(b). There is no indication that it applies to "all" violations of the Migratory Bird Treaty or that its commentary embraces an area larger than the statutory section it cites. Carpenter was sentenced under the wrong Guideline and must be resentenced.

The relevant statutory provisions are two: The misdemeanor portion of the Migratory Bird Treaty Act, 18 U.S.C. 707(a) and 18 U.S.C. § 1001, the statute applying to Carpenter's false statements to the service. As to the Class B misdemeanors under § 707(a), "For the sake of judicial economy, the Com-

mission has exempted all Class B and C misdemeanors and infractions from the coverage of the guidelines." U.S.S.G. § 1B1.9, comment. (backg'd). As to 18 U.S.C. § 1001, the applicable sentencing guideline is § 2F1.1, which covers all sorts of false statements even though their primary objection was not monetary. *See, id.,* applic. note 10(a).

In the background of the sentencing problems in this case is the tension between punishment based on the criminal charge of which the defendant was convicted and punishment based on conduct in some way relevant to that charge. Through the appeal process one serious set of charges against Carpenter was eliminated. As to them, his slate was wiped clean. But the conduct which had led to those charges was, of course, completely unaffected by the appeal. When he returned for resentencing the government could and did point to the same conduct in slaughtering birds which this court had set out in *Carpenter,* 933 F.2d at 750, and the district court had in view when it first sentenced Carpenter.

The United States Sentencing Commission states in its introduction to the Guidelines that it has made a compromise between a "real offense system" which would "sentence on the basis of all identifiable conduct" and a "charge offense system" which would "overlook some of the harms that did not constitute statutory elements of the offense of which the defendant was convicted." The Commission contends that the pre-Guidelines Sentencing system was a real offense system.

The Commission is operating within the structure provided by 18 U.S.C. § 3661, which reads:

**Use of information for sentencing**

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

But the most fundamental principle of our criminal justice system is no punishment may be inflicted except for violation of law—*nullem crimen, nulla pena sine lege. See, e.g.,*

*Sparf and Hansen v. United States,* 156 U.S. 51, 88, 15 S.Ct. 273, 288, 39 L.Ed. 343 (1895); *United States v. Bodiford,* 753 F.2d 380, 382 (5th Cir.1985); and J. Rawls, *A Theory of Justice* 238 (1971).

We thus have a system in which persons can be subjected to punishment only for violation of specific statutes; but once the violation of a statute has been established, a great many other factors may influence the sentence given. The situation is one of paradox, perilously near contradiction. The guideline dealing with "relevant conduct" for determining "the guidelines range" speaks of determining the range on the basis of "all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a). The Commentary, Application Note 1 adds: "The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability." This assertion sounds odd. Is not "criminal liability" the conviction of a crime for which one will be sentenced? Can one be sentenced for conduct for which one is not criminally liable?

The Guidelines go on to speak of information to be used in selecting a point within the guidelines range once the range has been chosen. Here, the Guidelines, repeating 18 U.S.C. § 3661, do note one limitation: the information may not be considered if it is "prohibited by law." U.S.S.G. § 1B1.4.

■ When a defendant has been found by a court to be erroneously convicted of a crime, the alleged crime may not then be considered by the sentencing court, nor may the gravity of his conduct be determined by a statute found to be inapplicable. To do so is "prohibited by law." To hold otherwise would be to make a mockery of the appeal and to subvert our fundamental process of appellate justice. The conduct of which Carpenter has been found guilty, apart from the § 1001 conviction, is conduct Congress has chosen to class as Class B misdemeanors, the

punishment for which is not governed by the Guidelines.

In resentencing, the district court is bound by its findings as to Carpenter's acceptance of responsibility and his nonobstruction of justice. These findings were challenged by the government at sentencing but have not been appealed. The government is also prohibited from asking for a more severe sentence on remand if it does so in an effort to punish the defendant for exercising his statutory right of appeal. *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969).

**REVERSED and REMANDED for sentencing.**