116 F.3d 400
 97 Cal. Daily Op. Serv. 4655, 97 Daily Journal
D.A.R. 7690
UNITED STATES of America, Plaintiff-Appellant-Cross-Appellee,
v.
Nick NEWLAND, Defendant-Appellee-Cross-Appellant.
 Nos. 96-10208, 96-10249.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 14, 1997.
Decided June 19, 1997.
 
 James D. Whitney, Assistant United States Attorney, Tucson, AZ, for plaintiff-appellant-cross-appellee.
 Jeffrey D. Bartolino, Tucson, AZ, for defendant-appellee-cross-appellant.
 Appeals from the United States District Court for the District of Arizona; Richard M. Bilby, District Judge, Presiding. D.C. No. CR-91-00446-RMB.
 Before: D. W. NELSON, FERNANDEZ, Circuit Judges and MOLLOY,* District Judge.
 D. W. NELSON, Circuit Judge:
 
 
 1
 Nick Newland appeals the sentence imposed upon his jury conviction of two counts of conspiracy and three counts of money laundering. Newland contends that the district court erred in applying § 4B1.1, the career offender provision of the United States Sentencing Guidelines. The government also appeals the sentence and contends that the district court erred because it refused to consider drug quantities imported and possessed by Newland's coconspirators when it determined Newland's base offense level for conspiracy. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In 1988, the government uncovered evidence of a criminal organization (the "Guzman organization") that imported large quantities of cocaine and marijuana from Mexico to Arizona. Nick Newland assisted the organization in various ways. For example, Newland purchased a Tucson warehouse that was later used to store contraband that had been imported by the Guzman organization. On March 24, 1993, a federal grand jury charged Newland with (1) conspiracy to import cocaine and importation of cocaine in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2; (2) conspiracy to possess with intent to distribute, and possession with intent to distribute, marijuana and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2; and (3) three counts of money laundering and aiding and abetting in violation of 18 U.S.C. § 1956(a)(1)(A), (a)(1)(B)(i) and 18 U.S.C. § 2. On June 8, 1993, a jury convicted Newland on all counts. On October 18, 1993, the district court sentenced Newland to concurrent terms of 324 months on the drug offenses and 240 months on the money laundering offenses.
 
 
 3
 This court reversed Newland's substantive drug offense convictions. We explained that "as an aider and abettor [Newland] cannot be held liable under a Pinkerton[v. U.S., 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)] theory for the subsequent acts of his coconspirators." United States v. Newland, No. 93-10593, 1995 WL 422515 (9th Cir. July 14, 1995). We affirmed Newland's money laundering convictions and his convictions of conspiracy to import cocaine and conspiracy to possess with intent to distribute marijuana and cocaine, and remanded to the district court for resentencing.
 
 
 4
 The district court resentenced Newland on April 12, 1996. The court determined that it could not consider the drug quantities imported or possessed by the Guzman organization because the Ninth Circuit had concluded that Newland could not be held liable under Pinkerton for the substantive acts of the conspiracy. Accordingly, the court sentenced Newland to the mandatory minimum (60 months) on the conspiracy counts. The court determined that Newland laundered $180,968.65 and assigned him an offense level of 24 on the money laundering counts. The sentencing court also determined that Newland was a career offender and assigned him a criminal history category of six. See U.S.S.G. § 4B1.1. These determinations produced a sentencing range of 100 to 125 months, and the court imposed a sentence of 105 months on the money laundering counts, to run concurrently with Newland's 60-month sentence on his conspiracy counts. Newland and the government both appeal from this sentence.
 
 DISCUSSION
 
 5
 We review the district court's interpretation and application of the Sentencing Guidelines de novo. United States v. Shrestha, 86 F.3d 935, 938 (9th Cir.1996).
 
 
 6
 I. Conspiracy as a "controlled substance offense"
 
 
 7
 A defendant may be classified as a career offender if, inter alia, "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.[1] The Sentencing Commission has determined that "[t]he terms 'crime of violence' and 'controlled substance offense' include the offense[ ] of ... conspiring ... to commit such offenses." U.S.S.G. § 4B1.2, comment. (n.1). Newland argues that the Commission lacks the authority to define conspiracy as a "controlled substance offense," and that Newland's classification as a career offender was erroneous insofar as such classification was based upon Newland's instant conviction for participation in the drug-related conspiracy.
 
 
 8
 We rejected this precise argument in United States v. Heim, 15 F.3d 830, 832 (9th Cir.1994), where we upheld the Sentencing Commission's authority pursuant to 28 U.S.C. § 994(a)(2) to include conspiracy within the definition of "controlled substance offense." See also United States v. O'Brien, 52 F.3d 277, 279 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 231, 133 L.Ed.2d 160 (1995). Thus, in this circuit, Newland's argument fails. Our decision is in accord with the weight of authority in the circuit courts. Only the D.C. Circuit and the Fifth Circuit have rejected the Sentencing Commission's inclusion of conspiracy within the definition of "controlled substance offense." See United States v. Bellazerius, 24 F.3d 698, 702 (5th Cir.1994); United States v. Price, 990 F.2d 1367, 1369-70 (D.C.Cir.1993). Every other circuit has rejected Price and has found that the Application Notes to U.S.S.G. § 4B1.2 were properly implemented pursuant to the Commission's broad mandate under 28 U.S.C. § 994(a), (h) (1994). See United States v. Piper, 35 F.3d 611, 616-18 (1st Cir.1994); United States v. Jackson, 60 F.3d 128, 131-32 (2d Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 487, 133 L.Ed.2d 414 (1995); United States v. Hightower, 25 F.3d 182, 186-87 (3d Cir.1994); United States v. Kennedy, 32 F.3d 876, 888-90 (4th Cir.1994); United States v. Williams, 53 F.3d 769, 772 (6th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996); United States v. Damerville, 27 F.3d 254, 257 (7th Cir.1994); United States v. Mendoza-Figueroa, 65 F.3d 691, 693 (8th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 939, 133 L.Ed.2d 864 (1996); United States v. Heim, 15 F.3d 830, 832 (9th Cir.1994); United States v. Allen, 24 F.3d 1180, 1185-87 (10th Cir.1994); United States v. Weir, 51 F.3d 1031, 1031-32 (11th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996).
 
 
 9
 II. Application of the career offender provision where the sentence is controlled by a money laundering offense
 
 
 10
 Newland argues that even if his conspiracy conviction could trigger the career offender provision, his money laundering conviction does not trigger § 4B1.1 because it is not a controlled substance offense. Therefore, argues Newland, the use of his money laundering conviction to calculate the offense guideline precludes reliance on the career offender provision.
 
 
 11
 Newland's attempt to rewrite the Guidelines is unavailing. The career offender provision is applicable where "the instant offense of conviction is a felony that is ... a controlled substance offense." U.S.S.G. § 4B1.1. Newland is being sentenced on two instant offenses, one of which qualifies as a "controlled substance offense." The grouping provisions of the Guidelines mandate that one offense level be calculated for both of these offenses. See U.S.S.G. § 3D1.3(a) ("[T]he offense level applicable to a Group is the offense level ... for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group."). Newland's money laundering conviction determined a unitary offense level that encompasses both of Newland's "instant" offenses: money laundering and drug conspiracy. Applying the career offender provision to this base offense level thereby executes Congress's intent to punish more severely those who repeatedly engage in drug crimes. See 28 U.S.C. § 994(h) (1994) ("The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for career criminals.).
 
 
 12
 To accept Newland's logic would be to subvert the purpose behind the career offender provision. Newland wants to avoid the provision because he has committed an additional crime that, by fortuity, is grouped with his drug offense and carries a marginally greater base offense level. Repeat drug offenders like Newland would be spared a harsher sentence simply because they had engaged in more criminal conduct. The Guidelines should not be strained to reach such an unreasonable result. Accordingly, we affirm the district court's decision to invoke the career criminal provision in this case.
 
 III. Relevant conduct
 
 13
 In its appeal, the government contends that the district court was required to consider the amount of drugs imported and possessed by Newland's coconspirators when it calculated Newland's base offense level for conspiracy. The district court believed that it was precluded from considering this sum because of our previous holding that as a mere aider and abettor of the drug conspiracy, Newland could not be liable under Pinkerton for the subsequent acts of his coconspirators. See Pinkerton v. United States, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). The district court interpreted this holding to mean that Newland's offense level could not be based upon the drug quantities associated with his coconspirators' acts.
 
 
 14
 In order to determine the base offense level for conspiracy to possess drugs, a sentencing court must determine the quantity of drugs involved in the commission of the crime. See U.S.S.G. § 2D1.1(c). The court derives the quantity of drugs from the defendant's "relevant conduct." Relevant conduct includes all acts "aided [and] abetted" by the defendant, U.S.S.G. § 1B1.3(a)(1)(A). Thus, the sentencing court must consider drug quantities, the importation or possession of which Newland aided and abetted directly. Although Newland's participation in the criminal enterprise does not invoke Pinkerton liability, Newland was found to have aided and abetted the drug conspiracy by laundering its illicit proceeds. Accordingly, the district court should have considered the quantity of drugs that was imported or possessed as a direct result of Newland's acts of money laundering.
 
 
 15
 Relevant conduct also includes "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). A "jointly undertaken criminal activity" is defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." Id. The Sentencing Commission provides this further instruction: "[T]he defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, comment. (n.2).
 
 
 16
 The district court must consider the quantity of drugs linked to Newland's involvement in the Guzman organization even though we reversed his convictions on the substantive drug offenses. The Supreme Court recently held that "a sentencing court may consider conduct of which a defendant has been acquitted." United States v. Watts, --- U.S. ----, ----, 117 S.Ct. 633, 636, 136 L.Ed.2d 554 (1997). The Court relied upon the sentencing court's traditional "discretion to consider various kinds of information," id. at ----, 117 S.Ct. at 635, as well as the commentary to U.S.S.G. § 1B1.3, which explains that "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment. (backg'd.). Watts directly overruled United States v. Brady, 928 F.2d 844, 851-52 (9th Cir.1991), which had held that a sentencing court may not consider facts that the jury necessarily rejected in a judgment of acquittal. See United States v. Sherpa, 110 F.3d 656, 662 (9th Cir.1996) ("To the extent there was any doubt about Brady 's lack of viability after Koon[v. U.S., --- U.S. ----, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)], there is none now.").
 
 
 17
 We recognize that Watts is not on all fours with the instant case. Watts permits a sentencing court to consider conduct underlying a charge of which a defendant was acquitted by a jury. Watts does not speak directly to whether a sentencing court may consider conduct underlying a reversed conviction. We have indicated previously that a sentence cannot be based upon such conduct. See United States v. Carpenter's Goldfish Farm, 998 F.2d 692, 695 (9th Cir.1993) ("When a defendant has been found by a court to be erroneously convicted of a crime, the alleged crime may not then be considered by the sentencing court...."). We do not believe that this distinction survives Watts. If "[c]onduct that is not formally charged ... may enter into the determination of the applicable guideline sentencing range," U.S.S.G. § 1B1.3, comment. (backg'd.), then conduct that could not be formally charged as a matter of law also should enter into that determination. We hold, therefore, that Carpenter's Goldfish Farm is overruled by Watts to the extent that it prohibits a sentencing court from considering conduct involved in a reversed conviction.[2] On remand, the district court must consider the substantive drug offenses committed by the Guzman organization when determining the base offense level for Newland's conspiracy conviction. Cf. United States v. Diaz-Rosas, 13 F.3d 1305, 1308 (9th Cir.1994) ("[A] defendant who is guilty of conspiracy to possess and distribute cocaine [but not of the underlying offenses] may properly be held accountable for any cocaine possessed or distributed by coconspirators, so long as that cocaine was foreseeable to him.").
 
 
 18
 We pause to emphasize that the sentencing court's consideration of the quantities involved in these substantive offenses remains circumscribed by U.S.S.G. § 1B1.3. Under that guideline, "a defendant is only responsible for amounts of drugs involved in transactions by others if the court finds that the acts were in furtherance of the jointly undertaken criminal activity that the defendant agreed to undertake and that the acts were reasonably foreseeable in connection with that criminal activity." 1 Practice Under the Federal Sentencing Guidelines 1-29 (Phylis Skloot Bamberger & David J. Gottlieb eds., 3d ed.1996). On remand, the sentencing court may not rely simply upon the total amount involved in the drug conspiracy, but must undertake an individualized evaluation of the amount for which Newland is accountable under the Guidelines. See United States v. Petty, 992 F.2d 887, 891 (9th Cir.1993); United States v. Navarro, 979 F.2d 786, 788 (9th Cir.1992).[3]
 
 
 19
 In sum, the district court must consider drug quantities imported or possessed by the Guzman organization when calculating Newland's base offense level for conspiracy. We remand to the district court for resentencing so that it may determine the amount of drugs involved in transactions that were either (1) aided and abetted directly by Newland, or (2) in furtherance of the jointly undertaken criminal activity that Newland agreed to undertake and that were reasonably foreseeable in connection with that criminal activity.
 
 
 20
 AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.
 
 
 
 *
 The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 The district court apparently sentenced Newland under the 1987 version of the Guidelines. For the purposes of this appeal, there is no meaningful distinction between the 1987 version and the 1995 version, the latter of which were in effect at the time of Newland's sentencing. Therefore, all references herein are to the 1995 version of the Guidelines
 
 
 [2]
 Arguably, the factual holding of Carpenter's Goldfish Farm-and not its sweeping dicta-survives Watts. In Carpenter's Goldfish Farm, the defendant previously had been convicted of violating the Lacey Act, 16 U.S.C. §§ 3372, 3373(d)(2), and the Migratory Bird Treaty Act, 16 U.S.C. §§ 703, 707(a). We reversed the Lacey Act conviction. See United States v. Carpenter, 933 F.2d 748 (9th Cir.1991). On remand, the district court sentenced Carpenter under U.S.S.G. § 2Q2.1, which applies only to the felony portion of the Migratory Bird Treaty Act, 16 U.S.C. § 707(b). We reversed this sentence because it was imposed pursuant to a guideline provision that, on its face, no longer applied to Carpenter's crime. Thus, the direct holding of Carpenter's Goldfish Farm is that a defendant's base offense level cannot be calculated under a particular Chapter 2 guideline provision unless the defendant has been convicted of an offense covered by that provision. This precept is not disturbed by either Watts or our holding today
 
 
 [3]
 Our prior determination that Pinkerton liability does not lie against Newland does not foreclose the conclusion that Newland should have "reasonably foresee[n]" the quantities imported and possessed by others "in furtherance of the jointly undertaken criminal activity." While the inquiries demanded by Pinkerton and U.S.S.G. § 1B1.3(a)(1)(B) are similar, see United States v. Rodriguez, 67 F.3d 1312, 1324 (7th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996), the standards of proof are not. Criminal liability under Pinkerton must be proved beyond a reasonable doubt, while relevant conduct generally must be proved by a preponderance of the evidence. See United States v. Watts, --- U.S. ----, ----, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); United States v. Bracy, 67 F.3d 1421, 1434 (9th Cir.1995); see also U.S.S.G. § 1B1.3, comment. (n.1) ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability.")