**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

LADI M. TULANER,
        *Defendant-Appellant.*

No. 06-10304

D.C. No.
CR-04-20159-1-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
November 5, 2007—San Francisco, California

Filed January 9, 2008

Before: Sidney R. Thomas, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Tallman;
Partial Concurrence and Partial Dissent by Judge Thomas

## COUNSEL

Jerald W. Newton, Sedona, Arizona, for the appellant.

H.H. (Shashi) Kewalramani, Assistant United States Attorney, Oakland, California, for the appellee.

## OPINION

TALLMAN, Circuit Judge:

Ladi Tulaner devised a scheme to defraud Johnson Matthey, Inc. (JMI) and Applied Materials, Inc. (Applied) by posing as an executive of Applied to obtain twelve valuable platinum sputtering discs used in the manufacture of semiconductor chips. His scheme failed and he was arrested before he obtained any of them. Tulaner pled guilty to one count of wire fraud and was sentenced to 71 months incarceration. *See* 18 U.S.C. § 1343.[1]

Tulaner appeals his sentence arguing that the district court improperly determined the "intended loss" of his scheme and therefore applied the wrong offense level increase under Sentencing Guideline § 2B1.1(b)(1). We disagree and hold that

---

[1]18 U.S.C. § 1343 provides in relevant part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

the district court properly determined that the intended loss was the value of the twelve sputtering discs Tulaner originally sought to obtain, rather than the value of the four discs Tulaner thought he was receiving the day he was arrested. We also reject Tulaner's argument that the district court should have applied an offense level reduction for a partially completed offense, because the crime to which Tulaner pled guilty was complete when an interstate wire transmission was made by a phone call placed in furtherance of his fraudulent scheme. We affirm.

I

In furtherance of his scheme to fraudulently obtain platinum sputtering discs, Tulaner registered a website and created an email address in Applied's name and, pretending to be an Applied executive, he contacted victim JMI seeking to purchase twelve discs worth approximately $2.3 million by transmitting a purchase order by email. JMI would not agree to ship all twelve without advance payment and instead proposed shipping four separate batches of three discs each, with each subsequent batch to be shipped after payment for the preceding batch had been received. Tulaner countered by email, requesting that JMI send three shipments of four discs each, and JMI agreed.

Before actually shipping the first batch of four discs, JMI became suspicious and discovered that Applied had not in fact ordered the sputtering discs. JMI then contacted the FBI, which arranged for a controlled delivery of worthless material to Tulaner. Tulaner believed he was receiving four sputtering discs worth between $700,000 and $800,000. Tulaner was arrested after he received the shipped package, which did not contain any platinum sputtering discs.

Tulaner was charged with conspiring to commit mail and wire fraud, mail fraud, wire fraud, and aiding and abetting to commit the offenses. He pled guilty to one count of com-

pleted wire fraud. At the sentencing hearing, Tulaner argued that the district court should find that the intended loss of his scheme was between $700,000 and $800,000. The district court rejected Tulaner's argument and valued the intended loss at $2.3 million, the value of all twelve discs. Accordingly, the district court applied a 16-level enhancement. After adjusting the base offense level for all other relevant enhancements and reductions, the applicable sentencing range was 57-71 months. The district court imposed a sentence of 71 months.

## II

The district court's interpretation and application of the sentencing guidelines is reviewed de novo. *United States v. Blitz*, 151 F.3d 1002, 1009 (9th Cir. 1998) (quoting *United States v. Newland*, 116 F.3d 400, 402 (9th Cir. 1997)). Factual findings, including the calculation of the victim's loss, are reviewed for clear error. *Id.* (citing *United States v. Clayton*, 108 F.3d 1114, 1118 (9th Cir. 1997), *cert. denied*, 522 U.S. 893 (1997)). The ultimate sentence is reviewed for "reasonableness." *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006).

## III

**[1]** Under Sentencing Guideline § 2B1.1(b)(1), the base offense level for a crime involving fraud is increased by a number of levels depending on specific offense characteristics, including the value of the loss caused by the fraud. In determining the amount of the loss, the greater of the actual or intended loss applies. U.S.S.G. § 2B1.1 app. n.3(A). Here, the FBI interceded before any platinum discs were shipped, so there was no actual loss. The question before us is how to value the intended loss for purposes of determining the appropriate increase to the base offense level.

**[2]** Intended loss, under the guidelines, is "the pecuniary harm that was intended to result from the offense . . . and . . .

includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." U.S.S.G. § 2B1.1 app. n.3(A)(ii).

**[3]** Pursuant to the Sentencing Guideline's commentary, as explicated by our circuit's case law, the value of the intended loss does not have to be "realistic," nor must the "defendant be capable of inflicting the loss he intends." *See United States v. Robinson*, 94 F.3d 1325, 1328 (9th Cir. 1996). Rather, the full scope of the defendant's fraudulent conduct is taken into account when calculating the intended loss.

For example, in *United States v. Joetzki*, 952 F.2d 1090, 1093 (9th Cir. 1991), the defendants were convicted of mail and wire fraud after issuing thirty-four checks on a cash management account they opened but did not fund. The district court included a $5 million check in the intended loss calculation at sentencing, even though the bank knew that the account balance was not sufficient and defendants did not expect the bank to honor the check. *Id.* at 1096. We affirmed, holding that the check was properly included in the calculation because defendants sought to inflict a $5 million loss by writing the check on the unfunded account. *Id.* The fact that the check was "obviously fraudulent" and not likely to be taken seriously was not relevant to determining the amount of the intended loss. *Id.*; *see also Blitz*, 151 F.3d at 1009-10 (valuing the intended loss based on the amounts pledged by, not received from, victims of defendants' telemarketing scheme and noting that "the telemarketers may not have inflicted all of the loss they really wanted to inflict, but that was not from any lack of intent"); *United States v. Salemo*, 81 F.3d 1453, 1463 (9th Cir. 1996) (holding that the defendant intended to defraud his victims of more than $5 million where he fraudulently applied for bank loans totaling that amount, even though he knew that some of the applications would be rejected).

**[4]** In this case, Tulaner fraudulently ordered twelve sputtering discs from JMI, intending to steal all twelve. Tulaner argues that once he realized that JMI was only willing to ship four discs at a time, he intended to steal only the first four shipped, not all twelve. Assuming that to be the case, Tulaner was limited by the manner in which JMI structured the contract, not any lack of intent on his part. The fact that JMI's prudent business practices, like those of the bank in *Joetzki*, thwarted Tulaner's effort to realize more from his fraud is not relevant to determining the amount of loss he intended to inflict. *See Joetzki*, 952 F.2d at 1093, 1096; *Blitz*, 151 F.3d at 1010 ("We have not . . . hesitated to hold defendants responsible for the full reach of their intent, even when that intent was thwarted.").

**[5]** As the district court noted, if Tulaner's scheme had been successful, he would have received over $2.3 million dollars worth of platinum sputtering discs from JMI. Thus we hold that the district court properly valued the intended loss based on the full reach of the scheme to defraud by applying the offense level increase for a $2.3 million intended loss.

IV

Tulaner argued that even if the district court properly found that he intended to steal all twelve discs, he should have received an "attempt reduction" for a partially completed offense. He relies on Application Note 17 to Sentencing Guideline § 2B1.1, which provides: "In the case of a partially completed offense (e.g., an offense involving a completed theft or fraud that is part of a larger, attempted theft or fraud), the offense level is to be determined in accordance with the provisions of § 2X1.1 . . . ." Application Note 4 to Sentencing Guideline § 2X1.1 states that where the participants "have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary for the successful completion of *part, but not of all,* of the intended offense . . . the offense level for the count" is the greater of "the

offense level for the *intended* offense minus 3 levels . . . or the offense level for the *part of the offense* for which the necessary acts were completed" (emphasis added).

The cited provisions are inapplicable in this case. Tulaner pled guilty to one count of wire fraud under 18 U.S.C. § 1343, which makes it a crime to "transmit[ ] or cause[ ] to be transmitted by means of wire . . . any writings, signs, signals, pictures, or sounds for the purpose of executing [any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses] . . . ." Cases in this and other circuits have recognized the "unique characteristic" of wire fraud, namely, that it is complete when a transmission is made to further the overall scheme to defraud. *E.g., Blitz*, 151 F.3d at 1011 (citing cases); *United States v. Carrington*, 96 F.3d 1, 7-8 (1st Cir. 1996), *cert. denied*, 520 U.S. 1150 (1997).

Tulaner argues that because the count of wire fraud to which he pled guilty was based on a phone call made on the day of his arrest, after the package he believed contained four sputtering discs had been delivered, the call was made to obtain four discs, not all twelve. Therefore, he argues, the "completed offense" of wire fraud involved a scheme to obtain four discs and the scheme to defraud JMI out of twelve discs for a total loss of $2.3 million was only "partially completed" entitling him to the attempt reduction.

**[6]** A wire fraud conviction does not require proof that defendant's actions caused the harm the scheme sought to inflict. *Blitz*, 151 F.3d at 1011 (holding that the defendants were not entitled to the attempt reduction for partially completed offenses because each call to a victim "was a separate, completed fraud offense . . . even if the object of the fraud was not ultimately attained"); *Carrington*, 96 F.3d at 7 ("The crime of wire fraud does not require that the defendant's object be attained. It only requires that the defendant devise

a scheme to defraud and then transmit a wire communication for the purposes of executing the scheme.").

**[7]** As described in the superceding indictment, the relevant "scheme to defraud" for purposes of the wire fraud count involved obtaining twelve sputtering discs. The phone call in furtherance of that scheme, even if only related to shipment of four discs, completed the offense. There is no "larger, attempted . . . fraud" of which the completed fraud is a part. *See* U.S.S.G. § 2B1.1 app. n.17. Thus, in the case of wire fraud, the attempt reduction for partially completed offenses is inapplicable even where, as here, the substantive content of the wire transmission for which the defendant is convicted relates to only part of the overall scheme to defraud.

**[8]** Tulaner also argues the offense was only partially completed because additional steps had to be taken before he received all twelve discs. He relies on *United States v. Martinez-Martinez*, 156 F.3d 936 (9th Cir. 1998). In that case, the defendants conspired to steal $880,000 dollars worth of merchandise from cargo containers in a transportation yard. *Id.* at 937, 940 n.6. The district court found that the theft was substantially complete and therefore refused to apply the attempt reduction. *Id.* at 938. We reversed, holding that the attempt reduction was appropriate because "[c]ompletion of the crime [theft from interstate shipments] was not inevitable" insofar as the defendants needed to secure approval from their "boss" before stealing the cargo containers. *Id.* at 940. In other words, in *Martinez-Martinez*, the theft was not complete. Here, however, the wire fraud was complete as soon as an interstate wire transmission was sent in furtherance of the fraudulent scheme.[2]

---

[2]Judge Thomas argues that Tulaner's position is indistinguishable from that of the defendants in *Martinez-Martinez* because, like the defendants in *Martinez-Martinez*, Tulaner "would have had to take additional steps to realize the proceeds of the entire fraudulent scheme." *Dissent* at 319. However, unlike Tulaner, the defendants in *Martinez-Martinez* would

**[9]** The fact that Tulaner would have had to take additional steps to get the other eight discs is irrelevant to determining whether the substantive scheme to defraud by mail or wire had been completed. *See Carrington*, 96 F.3d at 7 (rejecting the argument that the attempt reduction for partially completed offenses applies when the *harm* has not been completed and instead holding that the provision applies "only where the defendant has not completed the actions necessary to the *substantive offense*" (emphasis added)); *see, e.g., United States v. Gallagher*, 99 F.3d 329, 334 (9th Cir. 1996); *United States v. Petersen*, 98 F.3d 502, 509 (9th Cir. 1996); *United States v. Koenig*, 952 F.2d 267, 272 (9th Cir. 1991). As discussed above, Tulaner completed all of the acts necessary for the offense of conviction and he is not entitled to an attempt reduction for a partially completed offense.

## V

Tulaner developed an elaborate scheme to steal twelve platinum sputtering discs with a total value of more than $2.3 million. The fact that JMI's refusal to ship more than four discs at a time thwarted Tulaner's ability to see "the seed that [he] had so hopefully sowed . . . grow into a harvest crop" does not relieve him from responsibility for the "full reach" of his intent. *See Blitz*, 151 F.3d at 1010. For the purposes of determining the intended loss under the sentencing guidelines, the district court correctly held him responsible for the total pecuniary harm he sought to inflict. Likewise, the attempt reduction for partially completed offenses is not applicable in this case as the wire fraud was a completed offense. *See id.* at

have had to take additional steps *to complete the substantive offense*. *Martinez-Martinez*, 156 F.3d at 940. There was no completed theft offense that was part of a larger scheme. As a result, the only count of conviction in *Martinez-Martinez* to which defendants pled guilty was the crime of conspiracy. *See id.* at 938. Contrary to Judge Thomas's suggestion, there is a significant distinction between the two cases on this ground.

1011.

AFFIRMED.

---

THOMAS, Circuit Judge, concurring in part and dissenting in part:

I agree that the district court did not clearly err in finding that the intended loss of Tulaner's fraudulent scheme was approximately $2.3 million, the value of the twelve sputtering discs Tulaner sought to obtain. I respectfully dissent, however, from the conclusion that Tulaner was ineligible for an "attempt reduction" for partially completed offenses.

Application Note 17 to Sentencing Guideline § 2B1.1 and Application Note 4 to Sentencing Guideline § 2X1.1 provide that in the case of a "partially completed offense" — including a completed fraud that is part of a larger attempted fraud — the offense level for the count is the greater of "the offense level for the intended offense minus three levels . . . or the offense level for the part of the offense for which the necessary acts were completed."

The offense of wire fraud is complete when the relevant wire transmission is made. *United States v. Blitz*, 151 F.3d 1002, 1011 (9th Cir. 1998). Thus, the telephone call — in connection with which Tulaner pled guilty to wire fraud — was undoubtedly a completed offense.

I respectfully disagree, however, with the conclusion that Tulaner's conviction for the completed offense of wire fraud precludes application of the partially completed offense provision. This construction is contradicted by the plain language of Application Note 17, which explicitly contemplates that a completed fraud may be part of a larger attempted fraud. Such is the case here: Tulaner placed a phone call in furtherance of

the delivery of four sputtering discs. The phone call was a completed fraud, but was also part of a larger fraudulent scheme, the object of which was to obtain twelve discs. To hold otherwise would be in conflict with the district court's finding, which we have upheld on appeal, that the intended loss was the value of the twelve sputtering discs. In short, this is a paradigmatic case of a partially completed offense to which Application Note 17 applies.

Tulaner's position is indistinguishable from that of the defendants in *United States v. Martinez-Martinez*, 156 F.3d 936, 940 (9th Cir. 1998). In *Martinez-Martinez*, we held an attempt reduction to be appropriate because the defendants would have had to take additional steps to realize the proceeds of their crime. Here, although Tulaner had completed the offense of wire fraud, he would have had to take additional steps to realize the proceeds of the entire fraudulent scheme. Because Tulaner's completed fraudulent offense was also part of a larger attempted fraud, Tulaner's offense level should thus be calculated under the partially completed offense provision. Therefore, I would vacate the sentence and remand to the district court for proper sentence calculation taking into consideration the import of Application Note 17.