_____

No. 94-3665
_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *  Appeal from the United States
     v.                                      *  District Court for the
                                             *  Eastern District of Missouri.
Larry Brown,                                 *
                                             *
            Appellant.                       *


_____

                Submitted:   September 12, 1995

                  Filed:   January 30, 1996
                     _____

Before FAGG, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior
     Circuit Judges.

                     _____

HENLEY, Senior Circuit Judge.


     Larry Brown appeals from a 57-month sentence imposed by the
district court[1] following his guilty plea to possession of an
incendiary device, in violation of 18 U.S.C. § 371.  We affirm.


     During a meeting between Brown, a union business agent, and
Keith Milton, a union member, regarding Milton's dissatisfaction
with the union's handling of a grievance, the two came to blows.
The union suspended Brown after Milton filed a complaint against
him.  A few days later, on August 13, 1993, Brown sought the
assistance of Martin Dames, an acquaintance who was also an FBI
undercover informant, in injuring Milton and his property.  On
August 17, Brown introduced Dames to Donald Vaughn, who was on

_____

     [1]The Honorable Carol E. Jackson, United States District Judge
for the Eastern District of Missouri.

parole for murder.

On August 26, the trio met and Vaughn suggested putting a wired spark plug in the gas tank of Milton's car, which would cause the car to explode when it was started, a feat Vaughn said he had successfully performed in the past. During the course of several meetings, Brown and Vaughn discussed various ways of harming Milton and his property. They also made several attempts to locate Milton and his house. In September, Department of Labor agents questioned Brown as to whether he was stalking Milton and told him he would be a suspect if Milton were hurt. Brown told Dames about this conversation and said he had to be careful. In May 1994, Brown was charged with conspiracy to possess an incendiary device.

The presentence report (PSR) calculated a total offense level of 23, a criminal history category of I, and a Guidelines range of 46 to 57 months. Brown filed objections to the PSR, contending, inter alia, that he was entitled to a three-level reduction under U.S.S.G. § 2X1.1(b)(2) because he had not completed the acts necessary for the successful completion of the substantive offense. In relevant part, Section 2X1.1(b)(2) provides for a three-level reduction in conspiracy cases, "unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense."

At sentencing, Brown again claimed he was entitled to the reduction, attempting to characterize the substantive offense as arson or murder. Terry Coff, an FBI agent who investigated the case, testified that the conspirators had met seven times and during these meetings the plans regarding harming Milton "changed a few times," but at the last meeting Brown insisted that "we're still going to burn his house and blow up his car."

The court overruled Brown's objection. The court stated that

the focus of the guideline was on the substantive offense and what a defendant thought was necessary on his part for successful completion of the offense. The court indicated that had the substantive offense been arson or murder, as Brown had suggested, a reduction might have been warranted. However, the court found that the substantive offense was possession of an incendiary device and that by hiring somebody "who could do the job" Brown did "what he thought was necessary to successfully complete the act."

On appeal, Brown first suggests that the district court erred as a matter of law in applying 2X1.1(b)(2) by failing to distinguish between the conspiracy and the substantive offense. See United States v. Rothman, 914 F.2d 708, 710-11 (5th Cir. 1990) ("offense" in § 2X1.1(b)(2) refers to "underlying offense and not the conspiracy"). However, he reluctantly admits that the court did distinguish between the conspiracy and the substantive offense. In fact, as the government points out, the district court was careful to note that the substantive offense was possession of an incendiary device, and not arson or murder, as Brown had suggested. See United States v. Westerman, 973 F.2d 1422, 1428 (8th Cir. 1992) (court erred in applying 2X1.1(b)(2) by treating arson rather than mail fraud as substantive offense).

In the alternative, Brown argues that, as a matter of fact, the denial of the reduction was clearly erroneous because the conspirators did not possess the incendiary device. The government responds that a reduction was not warranted because a spark plug and wire were easily obtainable and, as the district court found, by hiring Vaughn who "could do the job," Brown did all he believed was necessary for completion of the offense. We agree. As the government notes, whether a reduction under Section 2X1.1 is warranted is a fact-specific inquiry, and courts have upheld the denial of a reduction even though a defendant had not reached the "last step" before completion of the substantive offense. For example, in an analogous situation, in United States v. Barton, 32

-3-

F.3d 61, 64 (4th Cir. 1994), a defendant pleaded guilty to attempted money laundering. Section 2X1.1(b)(1) provides a three-level reduction for an attempt, "unless the defendant completes all the acts [he] believed necessary for successful completion of the substantive offense." The court rejected the defendant's argument that a reduction was warranted because his money laundering "schemes were patently ridiculous . . . not one of [them] could ever have led to the successful completion of a money laundering transaction." Id. "Despite [the defendant's] protestations of naivete and ineptitude," the court upheld the denial of the reduction because defendant had accepted a suitcase containing money, which was "the first step or initiation of his planned delivery of what he believed was drug money to his associate[,]" who had given assurances that she could launder money. Id.

Brown also argues that the district court erred in restricting his cross-examination of Coff and thereby prevented him from proving that he had abandoned the spark plug conspiracy and had moved on to other conspiracies. We find no error. In fact, the court allowed cross-examination about the various plans to harm Milton, but noted the discussion of other plans was irrelevant to the conspiracy to which Brown had pleaded guilty - possession of an incendiary device. Moreover, we note that after Brown's cross-examination, on redirect, Coff stated that even though other plans had been discussed at the last meeting Brown still insisted on "burn[ing] [Milton's] house and blow[ing] up his car."

Accordingly, the judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.