**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jorge MARTINEZ–MARTINEZ,
Defendant–Appellant.**

**No. 97–50340.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1998.

Decided Sept. 14, 1998.

**937**

Emily Uhrig (argued), Richard Novak (briefed), Deputy Federal Public Defenders, Los Angeles, CA, for defendant-appellant.

Jerome H. Friedberg, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Before: REINHARDT, TROTT, and T.G. NELSON, Circuit Judges.

REINHARDT, Circuit Judge:

In this case, we consider what it means to be "about to complete" all acts necessary for commission of a crime under United States Sentencing Guideline § 2X1.1(b)(2). This phrase becomes important when a person arrested before completing the substantive offense is convicted of a conspiracy to commit the crime and that conspiracy is not covered by a specific offense guideline. The Sentencing Guidelines entitle a defendant convicted of such a conspiracy to be sentenced at an offense level three points below that applicable to the underlying substantive offense, unless he had completed or was about to complete the intended offense. We conclude that here the defendant was entitled to the three point reduction authorized by § 2X1.1(b)(2).

BACKGROUND

Jorge Martinez–Martinez worked as a truck driver for the MSL Transportation Group. On December 29, 1996, Martinez offered an MSL security guard $15,000 to allow him to steal cargo containers from the MSL lot. The guard agreed and arranged for Martinez to examine the contents of the containers at a time when he would be the only guard on duty. The guard then told his employer what had transpired, and the FBI was contacted.

On January 3, Martinez met with the guard to arrange the theft. That night, Martinez arrived at the MSL yard with his co-conspirator, Acxel Aroldo Avila. Martinez, Avila, and the guard used bolt cutters supplied by Avila to break into nine containers. Martinez and Avila thought that the contents of these containers probably could not be sold, so they resealed the containers and agreed to return when new shipments arrived. On January 8, the guard told Martinez that new containers with valuable merchandise would be arriving the next day. On the night of January 9, Martinez and Avila broke into the containers, one of which contained electronic equipment, but were unable to contact their "boss;"[1] they therefore did not steal any of the merchandise.

The next night, January 10, Martinez and Avila returned and opened several containers. The FBI had wired the guard, and the recording reveals that Martinez and Avila discovered boxes containing electronics, drills, and cloth. Martinez called the boss, and then proceeded to gather samples to take to him. At a time when the guard was alone, he told the FBI what was taking place:

Okay, guys.... [W]hat I understood is that, ... they called their boss already, he's preparing the trucks, they're gonna take samples to him, they'll probably take a load with them. You know, they're gonna take samples with them to show the boss. Okay, and if they're gonna take a load I'll tell you guys, ... taking a load, taking a load. But they're setting up some samples, and ... supposedly the truck is gonna come here with MSL insignias. The

1. The record does not reveal the identity of the boss, nor does the indictment name the boss in the conspiracy. In the recording of the events on June 10, Martinez refers to the boss as a trafficker with businesses in Mexicali. In his post-arrest interview, Martinez calls the man who approved or disapproved the theft of the merchandise "Fernando." The boss is elsewhere referred to as "Al Capone" and "the one who puts up the money."

words ... they have on the side of the truck, they say MSL. They're preparing all their (UI) so supposedly ... it won't look too much suspicious coming out with a different truck.... I think they're gonna come back with four drivers, take four loads out, four loads. Repeat, they're gonna take out four load[s] when they come back.

Martinez and Avila loaded one stereo system, a drill, and a small piece of denim into their car to show their boss. Martinez told the guard that before "dropping by" he would call him on the nearby pay phone. The guard asked how many trucks there would be. Martinez did not answer, but told the guard that he would be in one of the trucks. After Martinez and Avila loaded the samples, they resealed the opened containers. They then left the MSL yard with the samples to show the boss, but the Los Angeles Sheriff's Department arrested them while they were en route to meet with him.

During a post-arrest interview, Martinez explained that their procedure was to open the containers and then obtain approval from "Fernando" before stealing any goods, and that on the occasion that led to the conviction, Fernando had instructed Avila to bring samples to him.

Martinez pled guilty to a single count indictment charging conspiracy to steal goods in foreign commerce in violation of 18 U.S.C. §§ 371 and 659.[2] United States Sentencing Guideline § 2X1.1, which applies to conspiracies not covered by a specific offense guideline, calls for the application of the "base offense level from the guideline for the substantive offense" and mandates an additional three point reduction

> unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

The probation officer's Presentence Report recommended the three level reduction pursuant to § 2X1.1(b)(2). He based this recommendation on his findings that Martinez and Avila needed to show the samples to their boss and obtain his approval before stealing the goods and that the trucks needed to haul the containers were not present when Martinez and Avila left the yard. Therefore, he reasoned, "several more acts" were necessary in order to complete the substantive offense. The Presentence Report concluded, "[t]hese acts might have been pivotal in determining whether the theft would occur that night."

The district court accepted the Presentence Report's factual findings but rejected its recommendation to reduce Martinez's offense level pursuant to § 2X1.1(b)(2). It found that "there is evidence sufficient to know that the so-called boss had already approved the thefts and that the appropriate number of trucks were on their way or would be on their way to be able to take away these four containers." The court did not identify the evidence that supported these findings. It then concluded that "the crime had been sufficiently completed but that the arrest[s] were the only intervening causes which prevented the completion of this offense." Consequently, the district court determined that Martinez's sentencing range was twenty-one to twenty-seven months, based on an offense level of sixteen[3] and a criminal history category of one. On June 30, 1997, the court sentenced Martinez to twenty-one months in prison.

The sole issue raised on appeal is whether the district court clearly erred in refusing to reduce Martinez's offense level under U.S.S.G. § 2X1.1(b)(2).

---

**2.** There was no written plea agreement. The Government verbally agreed to recommend a three point reduction in Martinez's offense level for acceptance of responsibility, and a sentence at the low end of the applicable sentencing range.

**3.** This figure includes a base offense level of four, a thirteen level increase for the amount of the loss, a two level increase for more than minimal planning, and a three level decrease for acceptance of responsibility.

## DISCUSSION

■ A district court may find a reduction unwarranted if the conspirators either completed the acts they believed necessary for completion of the offense, or "were about to complete all such acts but for apprehension or interruption by some similar event beyond their control." U.S.S.G. § 2X1.1(b)(2). "Whether a reduction under 2X1.1 is warranted is a fact-specific inquiry. . . ." *United States v. Brown*, 74 F.3d 891, 893 (8th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 74, 136 L.Ed.2d 33 (1996). Thus, our standard of review is ordinarily "clearly erroneous."

■ We have previously considered whether a defendant was entitled to a reduction under § 2X1.1 in only two cases. In neither did we discuss the meaning of "about to complete."[4] We now hold that unless the remaining steps to be taken in the commission of a crime are so insubstantial that the commission of the substantive offense is inevitable, barring an unforeseen occurrence that frustrates its completion, the conspirators are *not* about to complete the requisite acts and the defendant must be granted the three point reduction.[5]

■ In the instant case, the district court's determination that the defendant had "sufficiently completed" the criminal offense and was therefore ineligible for the § 2X1.1 reduction rested on its clearly erroneous factual findings that the theft had already been approved by the boss and that the trucks were on their way or about to be on their way to the scene. The *only* evidence in the record that the state cites in support of the court's findings is the guard's summary of events to the FBI. The state argues that the definitive terms used by the guard to describe the plans to steal the containers ("they're gonna come back with four drivers . . . they're gonna take out four loads when they come back") demonstrate that the boss had already made his decision and set the theft in motion. However, within the same statement, the guard also specified that Martinez and Avila were taking *samples* to the boss ("they're gonna take samples to him . . . they're gonna take samples with them to show the boss.") The January 10 recording of the conversation among the guard, Martinez, and Avila also contains numerous other references to "samples," by both Martinez and the guard. There is no logical explanation for these references to samples other than that the boss wanted to see examples of the merchandise before approving the theft.[6] If the boss had *already* approved the theft, there would have been no reason for him to require Martinez and Avila to bring samples to him and then, afterwards, to return to the MSL yard with the trucks, rather than sending the trucks to the MSL yard immediately

---

4. In both of these cases, the conspirators had already performed all of the acts they believed necessary to complete the offense. In *United States v. Petersen*, 98 F.3d 502, 504 (9th Cir. 1996), the defendant had already executed a fraudulent $150,000 wire transfer and was thwarted only when the bank president managed to seize the money before the defendant had a chance to withdraw it. In *United States v. Yellowe*, 24 F.3d 1110, 1113 (9th Cir.1994), Yellowe had taken all the steps that he believed necessary for fraudulent use of the credit card numbers of thousands of former telemarketing customers. The actual completion of his crime was blocked only by the actions of undercover FBI agents who made certain that the terminals the conspirators planned to use to execute the fraud were not actually connected to a bank and by his ensuing arrest.

5. In evaluating whether all the acts necessary for completion of the offense have occurred or are about to have occurred, the court must look at the actions of all of the conspirators collectively, rather than at those of a particular defendant individually.

6. The fact that Martinez and Avila did take $458 worth of merchandise out of the yard as samples to show the boss does not mean that they completed the crime, since most of the merchandise targeted for the theft (over $880,000 worth) remained in the yard. Application Note 4 to U.S. Sentencing Guideline § 2X1.1 explains the appropriate calculation when an individual has completed "part, but not all, of the intended offense." It specifies that the court should sentence the defendant under the greater of the following two offense levels: the level for the completed part of the offense, or the level for the intended offense minus three. Under U.S. Sentencing Guideline § 2B1.1, the offense level for Martinez's intended theft was seventeen; even with a three point reduction, which would lower it to fourteen, this is much greater than the offense level for the actual completed theft of the samples, which was only five.

and having Martinez and Avila wait there. The other evidence in the record also strongly supports this conclusion. For example, Martinez and Avila resealed the containers before leaving the MSL yard, indicating that the decision to carry out the theft was not a done deal.

The fact that Martinez and Avila had twice previously abandoned their attempts to steal goods from the yard, once when they thought the contents of the containers could not be sold and on another occasion when they could not contact their boss, shows that the boss was interested only in certain merchandise and that the boss's approval of the specific plans was essential. The fact that all of the evidence in the record demonstrates that Martinez and Avila were gathering samples to bring to the boss leads to only one possible conclusion—that his approval had not yet been granted.

Without such approval, Martinez and his co-conspirators could not be said to have been "about to complete" the theft. Completion of the crime was not inevitable, if only because the necessary criminal conduct could not go forward without the as yet unobtained approval of the defendant's "boss." It is undisputed that Martinez had removed only samples from the yard; he had not yet stolen the goods; he had not yet loaded the goods on to trucks; and there were no trucks at the scene on which the goods could be loaded. The evidence in the record further demonstrates that the boss had not yet approved the plan to steal the goods and had not yet sent any trucks to the yard. Twice before, Martinez and Avila had abandoned plans to steal goods, once because they were unable to obtain the boss's approval. There were therefore steps remaining to be taken before the conspirators could complete the substantive offense that were not insubstantial—

including a step that required a decision by a third party. Even if the police had not arrested Martinez and Avila, completion of the theft on that night was not a foregone conclusion.[7]

We therefore hold that the district court clearly erred in denying Martinez the three point offense level reduction under § 2X1.1, and reverse and remand for resentencing consistent with this opinion.[8]

REVERSED AND REMANDED.

MANDATE SHALL ISSUE FORTHWITH.

---

7. The commentary to § 2X1.1 offers another way of describing when the members of the conspiracy have performed acts that make them ineligible for the three point reduction: if "the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim." U.S.S.G. § 2X1.1, comment. (backg'd.). The conspirators certainly cannot fairly be characterized as "on the verge of" completing the theft of the merchandise when the decision to steal the merchandise had not even been made.

8. Martinez has already served at least fourteen months of his sentence. If he obtains 2X1.1's three point reduction, his offense level will be thirteen and his sentencing range will be twelve to eighteen months. For this reason, we order the mandate to issue forthwith. *See United States v. Graves,* 143 F.3d 1185, 1191 n. 7 (9th Cir.1998).