# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-3277

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Brian C. McGarr, | * | |
| | * | |
| Defendant-Appellant. | * | |

———————

Submitted: March 11, 2003
Filed:      June 6, 2003

———————

Before HANSEN,[1] Chief Judge, RILEY and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

Defendant-Appellant Brian McGarr appeals the district court's[2] refusal to apply

———————

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

[2]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

a three level reduction in the calculation of his offense level for an uncompleted conspiracy.  See U.S.S.G. § 2X1.1(b)(2).  We affirm.

I.

McGarr was an Independence, Missouri police officer.  He came under investigation by the FBI after it was learned that he solicited assistance and information to aid in the theft of drugs and/or money from drug dealers.  Through a cooperating witness, authorities informed McGarr of the location of a parked car that contained drug proceeds.  After receiving this information, McGarr took a leave from work.  Authorities then filmed McGarr as he approached the parked car in civilian clothes, broke one of the car's windows with a rock, and stole $6,700.  He later gave a portion of these proceeds to the cooperating witness.

Next, again through the cooperating witness, authorities informed McGarr that two potential robbery targets were in a parking lot awaiting an illicit delivery.  In fact, the targets were female, undercover FBI agents.  Recorded conversations between McGarr and the cooperating witness contained a detailed account of McGarr's attempts to rob the targets.  McGarr first approached the targets' parked car while he was on duty.  During this encounter, a local officer who happened to be in the vicinity saw McGarr and stopped to provide possible back-up.  McGarr then called in a motorist assistance report and continued the encounter under the guise of a motorist assistance stop.  Due to the interruption, McGarr merely assessed the situation and allowed the targets to remain.  After he left the parking lot, McGarr told the cooperating witness that it would be better to approach the targets in civilian clothes.  The conspirators, however, did not pursue this plan because McGarr instead decided to enlist his brother, Scott McGarr ("Scott"), in the conspiracy and have Scott commit the robbery.

Local authorities knew Scott as a potentially violent person.  When it was discovered through the cooperating witness that Scott was to consummate the

robbery, the undercover agents were recalled. After the targets left the parking lot, authorities witnessed Scott driving in the parking lot and through the surrounding areas, including behind businesses and vacant buildings. McGarr reported to the cooperating witness that Scott had sought out the targets, but was unable to locate them because they were no longer in the parking lot. McGarr and the cooperating witness then discussed other ways they could rob the targets.

McGarr was arrested the next day. He pled guilty to conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). He argued at sentencing that a three level reduction under U.S.S.G. § 2X1.1(b)(2) should apply because the government failed to prove that, but for official interference, the conspirators were about to complete all acts necessary to carry out the robbery.[3] In support of his arguments, McGarr asserted that he did not dispatch Scott to commit the robbery, but rather dispatched him to a gas station near the targets' location to await further instructions while McGarr and the cooperating witness worked out the final details of how Scott should carry out the robbery. Ultimately, Scott called McGarr to report the missing targets before McGarr and the cooperating witness could finalize the details and relay instructions to Scott.

McGarr argued that these facts demonstrated the conspiracy was still in the planning stages and had not moved into its final phase of execution. According to McGarr, because the conspirators had not advanced their scheme to its absolute, final stage of execution, it was impermissibly speculative for the district court to conclude

---

[3]U.S.S.G. § 2X1.1(b)(2) provides:

If a conspiracy, decrease [the offense level] by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

that the conspirators would have consummated the robbery but for official intervention.

The district court rejected McGarr's argument. The district court did not reject McGarr's factual assertion that he and the cooperating witness continued planning the offense after summoning Scott to the vicinity of the targets. Rather, the district court found that the conspirators had conducted sufficient planning and had sufficiently set in motion those events necessary for execution to make completion of the offense reasonably certain. In addition, the district court found no meaningful indication that, absent official interference, any of the conspirators were likely to abandon the enterprise.[4] Therefore, the district court refused to apply the three level reduction of U.S.S.G. § 2X1.1(b)(2). We affirm.

## II.

We review the district court's interpretation of the sentencing guidelines de novo and its factual determinations for clear error. United States v. Ballew, 40 F.3d 936, 943 (8th Cir. 1994). The underlying facts are essentially undisputed. Accordingly, as a matter of law to be reviewed de novo, we must determine whether these essentially undisputed facts support the district court's conclusion that the

---

[4]The district court recognized the possibility that the conspiracy might have collapsed of its own accord, but discounted this possibility as too improbable. For example, the district court noted:

> I recognize that it's conceivable that Brian McGarr would get into a dispute with Scott McGarr about the weapon and would – that it could have – possibly the plan could have blown up because of disagreement between the two. But it seems to me that having summoned Scott McGarr to come up from Lee's Summit, that it's really quite unlikely that Brian McGarr would then say well, I have changed my mind, if you're going to have a weapon, go on home. So I would rule for the government on the calculation.

conspirators were about to carry out all the acts necessary for successful completion of the robbery.

As correctly noted by the district court, a determination under U.S.S.G. § 2X1.1(b)(2) is a ruling "based on probabilities." Such a ruling necessarily involves uncertainty. The question in this case, then, is whether the amount of uncertainty rises to the level of impermissible speculation, as argued by McGarr, or whether completion of the offense was "reasonably certain" as required under the standard applicable to U.S.S.G. § 2X1.1(b)(2). See U.S.S.G. § 2X1.1(a) (stating that the offense level is "the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with *reasonable certainty*") (emphasis added).

This court has held that completion of the substantive offense may be reasonably certain where conspirators have not yet advanced their conspiracy into its final stage of execution. United States v. Brown, 74 F.3d 891, 893 (8th Cir. 1996) ("[C]ourts have upheld the denial of a reduction even though a defendant had not reached the 'last step' before completion of the substantive offense."); United States v. Johnson, 962 F.2d 1308, 1312 (8th Cir. 1992) (holding that conspirators would have completed their offense but for the intervention of law enforcement officials where the conspirators "crossed the 'shadowy line' from mere preparation to attempt" by approaching a bank with weapons and disguises, driving around the bank three times, and stopping on one occasion to open a door of their vehicle). Here the only activity that remained uncompleted was the "go-ahead" call from McGarr to Scott and the actual robbery itself. Scott was in the vicinity with a shotgun and he had circled the area looking for the targets. Removal of the targets due to safety concerns was clearly an event beyond the conspirators' control. As such, we agree with the district court that "the circumstances demonstrate[d] that the conspirators were about to complete all [acts necessary for successful completion] but for apprehension or interruption by some similar event beyond their control."

The decision of the district court is affirmed.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT