**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

HOANG AI LE,

*Defendant - Appellant*.

No. 23-1495

D.C. No.
2:99-cr-00433-
WBS-AC-7

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted August 23, 2024
San Francisco, California

Filed October 22, 2024

Before: Marsha S. Berzon, Daniel A. Bress, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge Bress;
Dissent by Judge Berzon

# SUMMARY[*]

## Criminal Law

The panel affirmed the sentence imposed on Hoang Ai Le, whom a jury convicted of Hobbs Act conspiracy and a related firearm offense, in a case in which Le and a team of co-conspirators decided to steal computer chips from Diamond Flower Electric Instruments ("DFI").

The conspirators divided into two teams. The first team, or "entry" team, was to invade the private home of the owner of DFI, who was believed to possess the alarm codes to the business. Once the codes were obtained, a second team, led by Le, would go to DFI, access the building with the alarm codes, and steal the computer chips.

The entry team went to the home of DFI employee Zhou Shi Wen ("Wen") to execute the plan. An occupant of the home opened the door, and three conspirators ran inside and used duct tape, bed sheets, and electrical cords to tie up the DFI employee, the man's elderly parents, and a friend who was visiting.

For the next several hours the conspirators tortured, beat, and pistol-whipped Wen as they tried to extract information from him about the alarm codes. When Wen tried to explain that he was only a handyman at DFI and did not have the codes, he was hit in the head with a gun. Eventually, the conspirators realized that Wen was telling the truth and did not have the security codes. Although Le and his team were

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

standing by at a nearby motel awaiting the codes, they abandoned the plan to steal computer chips from DFI after the entry team failed to complete its part of the mission.

The issue on appeal was whether Le is entitled to a reduction under U.S.S.G. § 2X1.1(b)(2), which reads:

> If a conspiracy, decrease by 3 levels, unless [1] the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or [2] the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

The panel held that the district court did not clearly err in finding that Le was not entitled to the reduction under § 2X1.1(b)(2)'s second prong. Because the conspirators had gone to such lengths, and because Le and his team were waiting at the nearby motel and ready to head to DFI with the codes, the conspirators were "about to complete" the Hobbs Act robbery under § 2X1.1(b)(2). Any argument that the failure of the Hobbs Act robbery offense was due to circumstances within the conspirators' control is unavailing because it was beyond their control that Wen did not know the DFI passcodes.

Judge Berzon dissented. She wrote that the district court committed clear error by not granting the three-level reduction because none of the conditions is met for application of § 2X1.1(b)(2)'s second prong, as (1) the conspirators were not "about to complete" "all the acts"

planned toward accomplishing the Hobbs Act robbery given that the remaining steps—driving ten miles, successfully using the access codes, finding and stealing the computer chips—were substantial; and (2) the robbery of DFI failed due to circumstances within the conspirators' control —their mistaken identification of Wen as the owner—and in no way "similar" to apprehension.

## COUNSEL

Jason Hitt (argued), Assistant United States Attorney; Camil A. Skipper, Assistant United States Attorney, Appellate Chief; Phillip A. Talbert, United States Attorney; Office of the United States Attorney, Eastern District of California, Sacramento, California; for Plaintiff-Appellee.

Geoffrey M. Jones (argued), Geoffrey Jones Law Office, Fairfax, California, for Defendant-Appellant.

# OPINION

BRESS, Circuit Judge:

The issue on appeal is whether defendant Hoang Ai Le is entitled to a three- level reduction under United States Sentencing Guideline § 2X1.1(b)(2) for participating in a conspiracy in which the substantive offense, Hobbs Act robbery, was not completed. We hold that the district court did not clearly err in finding that Le was not entitled to the § 2X1.1(b)(2) reduction. We affirm Le's sentence.

I

In January 1996, Hoang Ai Le and a team of co-conspirators decided to steal computer chips from a Sacramento business, Diamond Flower Electric Instruments ("DFI"). The conspirators divided into two teams. The first team, or "entry" team, was to invade the private home of the owner of DFI, who was believed to possess the alarm codes to the business. Once the codes were obtained, a second team, led by Le, would go to DFI, access the building with the alarm codes, and steal the computer chips. Le awaited the entry team's efforts from a nearby motel room, which the conspirators had rented to serve as a convenient headquarters. The motel was also near DFI's building.

On the night of January 20, 1996, the entry team went to the home of DFI employee Zhou Shi Wen ("Wen") to execute the plan. An occupant of the home opened the door when one of the conspirators approached the house and reported that he was having car trouble and needed help. At that point, three conspirators ran inside and used duct tape, bed sheets, and electrical cords to tie up the DFI employee, the man's elderly parents, and a friend who was visiting.

For the next several hours, as the entry team guarded the parents and friend at gunpoint, the conspirators tortured, beat, and pistol-whipped Wen as they tried to extract information from him about the alarm codes. When Wen tried to explain that he was only a handyman at DFI and did not have the codes, he was hit in the head with a gun. Eventually, the conspirators realized that Wen was telling the truth and did not have the security codes. Although Le and his team were standing by at the motel awaiting the codes, they abandoned the plan to steal computer chips from DFI after the entry team failed to complete its part of the mission. Nevertheless, the entry team still ransacked Wen's residence, taking $1,500 in personal valuables.

As relevant here, in 2007, a jury convicted Le of Hobbs Act conspiracy and a related firearm offense. 18 U.S.C. §§ 1951(a), 924(c). The planned Hobbs Act violation consisted of the robbery of Wen (which was completed), in a way that affects interstate commerce (which was not completed, as that portion of the scheme required the conspirators to steal the chips from DFI). *See id.* § 1951(a).

Le was ultimately sentenced to 240 months' imprisonment for the Hobbs Act charge. Le appealed his sentence to this court, arguing, *inter alia*, that the district court erred in applying § 2B3.1 of the Guidelines, which governs completed robberies, rather than § 2X1.1, which governs inchoate offenses such as conspiracies. We agreed with Le and remanded the case for resentencing. *United States v. Le*, 2021 WL 4892166, at *1 (9th Cir. Oct. 20, 2021).

On remand, Le argued that he was entitled to a three-level reduction in his base offense level under U.S.S.G. § 2X1.1(b)(2), which applies to conspiracies that are not

completed. The Guidelines presumptively key the base offense level for inchoate crimes like conspiracy to the base level for the completed offense, here Hobbs Act robbery. *See* U.S.S.G. § 2X1.1(a). But the Guidelines then call for a three-level reduction unless the conspiracy was far enough along to not warrant this more favorable treatment. The three-level reduction is set forth in § 2X1.1(b)(2), which reads as follows:

> If a conspiracy, decrease by 3 levels, unless [1] the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or [2] the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

The district court denied the § 2X.1(b)(2) reduction under the second prong of the above-quoted provision. The court found that "[b]y the time the conspirators discovered that the victim could not provide the alarm codes, the conspirators had already entered the victim's residence, tied up the victim and his parents, and tortured and interrogated the victim in furtherance of the planned DFI robbery." Because Le and his team "were already waiting at a nearby motel for the signal to proceed to the DFI warehouse, the conspirators were 'about to complete' the offense at the time it was interrupted." The district court also found that the conspiracy was interrupted by circumstances beyond the conspirators' control because the conspirators could not control the fact that Wen did not know the alarm codes.

The Presentence Investigation Report calculated an advisory Guidelines range of 210 to 262 months, capped by a 240-month statutory maximum. Citing the seriousness of the crime, the district court sentenced Le to 240 months in prison. This appeal followed.

II

We review the district court's interpretation of the Sentencing Guideines de novo. *United States v. Barrogo*, 59 F.4th 440, 444 (9th Cir. 2023). But we review the court's application of the Guidelines for abuse of discretion and its factual findings for clear error. *United States v. Parlor*, 2 F.4th 807, 811 (9th Cir. 2021). "'Whether a reduction under 2X1.1 is warranted is a fact-specific inquiry,'" so that "our standard of review is ordinarily 'clearly erroneous.'" *United States v. Martinez-Martinez*, 156 F.3d 936, 939 (9th Cir. 1998) (quoting *United States v. Brown*, 74 F.3d 891, 893 (8th Cir. 1996)). "Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record." *United States v. Chichande*, 113 F.4th 913, 919 (9th Cir. 2024). We hold that the district court did not clearly err in concluding that Le was not entitled to a three-level reduction under the second prong of § 2X1.1(b)(2), nor did the court commit any legal error.

A

The district court found that the co-conspirators had "entered the victim's residence, tied up the victim and his parents, and tortured and interrogated the victim in furtherance of the planned DFI robbery." Because the conspirators had gone to such lengths, and because Le and his team were waiting at the nearby motel and ready to head to DFI with the codes, the conspirators were "about to

complete" the Hobbs Act robbery under § 2X1.1(b)(2), which meant the three-level reduction should not apply.

While the Guidelines supply no definition of the point at which conspirators are "about to complete" an offense, the district court's conclusion cannot be described as clearly erroneous. The home invasion, torture, and interrogation of the person who supposedly knew the DFI alarm codes were the most significant tasks that Le and his co-conspirators needed to complete. Through these vicious actions, the conspirators completed that aspect of the Hobbs Act violation requiring robbery of a person. *See* 18 U.S.C. § 1951(a), (b)(1). The remaining steps consisted of driving a short distance to the DFI warehouse, punching in the alarm codes, and removing the computer chips. Had the conspirators successfully secured the codes to the building, the remaining steps would have been straightforward: entering a nearby building to which they had the alarm codes.

Something else always could have gone wrong along the way. But that possibility does not detract from what the conspirators had already done. *See United States v. Medina*, 74 F.3d 413, 418 (2d Cir. 1996) (per curiam) (explaining that § 2X1.1(b)(2) differentiates punishment "based on the *conduct* of the defendant, not on the probability that a conspiracy would have achieved success"). Someone who is "about to" do something is going to do it relatively soon. *See, e.g.*, *About*, Merriam-Webster Dictionary 2 (2019); *About*, New Oxford American Dictionary 5 (2010). But whether someone is "about to" do something depends on the facts and context. It was not clearly erroneous for the district court to conclude that, when the conspirators had selected the target business, brutalized the person they suspected of being the owner, and stationed a ready team near the DFI

warehouse, the conspirators were about to complete the Hobbs Act robbery with the codes once obtained.

This is consistent with the official commentary to § 2X1.1, which states:

> In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under § 2X1.1(b)(1) or (2).

U.S.S.G. § 2X1.1, comment. (backg'd). This guidance aligns with the text of § 2X1.1(b)(2). *See United States v. Castillo*, 69 F.4th 648, 655–56 (9th Cir. 2023) (citing *Kisor v. Wilkie*, 588 U.S. 558 (2019)); *see also Martinez-Martinez*, 156 F.3d at 940 n.7. In this case, it would not be clearly erroneous to conclude that Le and his co-conspirators "substantially completed" the substantive offense or were "on the verge of" completing it. U.S.S.G. § 2X1.1, comment. (backg'd). This was not a situation in which the conspirators were stopped "well before" completing the necessary acts. *Id.*

Our conclusion coheres with the evident objective of § 2X1.1(b)(2). From its plain text, it is evident that the drafters of that provision wanted to penalize a mere

conspiratorial agreement less harshly than situations in which much of the wrongful conduct was already completed. *See United States v. Dosen*, 738 F.3d 874, 878 (7th Cir. 2013) ("[I]t makes sense that conspirators thwarted before their conspiracy's aim is achieved should be punished more heavily the greater the probability that the conspiracy would have resulted in a substantive offense . . . ."). As between the far poles of mere talk and completed action, there is always a question of degree. But it is difficult to argue that for a conspiracy in which the plan was to brutally torture a man and then steal computer chips, that Le deserves a reduced sentence because the conspirators merely tortured an unsuspecting victim and did not take the comparatively innocuous step of freely walking into a building with the alarm codes. *Cf. United States v. Petersen*, 98 F.3d 502, 509 (9th Cir. 1996) (affirming the denial of a three-level reduction under § 2X1.1 where the offense was "substantially completed" and "on the verge of completion") (quoting U.S.S.G. § 2X1.1, comment. (backg'd)).

Le relies heavily on *United States v. Martinez-Martinez*, 156 F.3d 936 (9th Cir. 1998), but that case is quite different than this one. In *Martinez-Martinez*, the conspirators' completion of a plan to steal goods in foreign commerce required the approval of the "boss." *Id.* at 939–40. And by the time the defendant was arrested, "the boss had not yet approved the plan." *Id.* at 940. The district court's finding that "the so-called boss had already approved the thefts" was therefore "clearly erroneous." *Id.* at 938–39. Because "the decision to carry out the theft was not a done deal," we held that the § 2X1.1(b) reduction was warranted. *Id.* at 940.

In this case, the decision to steal the computer chips from DFI was a done deal. And the conspirators had gone so far as to torture a man for hours, only to call off the plan when

the victim could not give up the needed information. We do not hold that the decision to carry out the crime, standing alone, was sufficient to warrant denial of the § 2X1.1(b) reduction. Instead, we rely on everything that the conspirators did after the decision was made, including torturing Wen and positioning themselves to head to DFI with the codes. *Martinez-Martinez*, in which the decision to carry out the crime had not even been finalized, does not fairly resemble this case.

At the outset of its analysis, *Martinez-Martinez* stated that

> We now hold that unless the remaining steps to be taken in the commission of a crime are so insubstantial that the commission of the substantive offense is inevitable, barring an unforeseen occurrence that frustrates its completion, the conspirators are *not* about to complete the requisite acts and the defendant must be granted the three point reduction.

*Id.* at 939. Although Le argues that this language requires a different outcome here, we do not read the case that way.

In the context of the conspirators' plan in this case, it is fair to conclude that the "remaining steps to be taken in the commission of [the] crime [were] so insubstantial that the commission of the substantive offense [was] inevitable." *Id.* In applying this standard, the steps that remain must be compared against the steps that were completed. *See Medina*, 74 F.3d at 418. Here, there is no evidence of anything that stood in the conspirators' way once they obtained the alarm codes. And while we can always speculate about something that could have upset the plan—

a flat tire, police arriving at DFI, and so on—we have never held that speculation can justify a three-level reduction under U.S.S.G § 2X1.1(b)(2).  Nothing in the record in this case or the nature of the contemplated scheme suggests that so much remained to be completed that a § 2X1.1(b)(2) reduction was required.  At the very least, the district court did not clearly err in concluding otherwise.  *See Dosen*, 738 F.3d at 878 ("When the preparations for the commission of a crime are complete, it can be assumed that the crime will take place unless some unforeseen event intervenes . . . .").

Le essentially argues that the test in *Martinez-Martinez* imposes a very high burden, one that is much higher than either the language of § 2X1.1(b) or the Guidelines commentary would suggest.  But we have never indicated that *Martinez-Martinez* imposes some kind of elevated test for avoiding the three-level reduction in § 2X1.1(b), much less one that would contradict that provision's plain text or the Guidelines commentary.  If anything, *Martinez-Martinez* runs counter to that suggestion.

*Martinez-Martinez* itself referenced the official commentary to § 2X1.1, which, as noted above, describes how the three-level reduction should not be granted if "the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim." *Martinez-Martinez*, 156 F.3d at 940 n.7 (quoting U.S.S.G. § 2X1.1, comment. (backg'd)).  *Martinez-Martinez* described this Guidelines commentary as "offer[ing] another way of describing when the members of the conspiracy have performed acts that make them ineligible for the three point reduction."  *Id.*  Given *Martinez-Martinez*'s supportive reference to the Guidelines commentary, we read *Martinez-Martinez*'s stated test as a restatement of the Guidelines

commentary that it favorably acknowledged. *Martinez-Martinez* did not suggest there was any difference between the two.

This reading of *Martinez-Martinez* is particularly justified considering that *Martinez-Martinez* was a relatively easy case, in that there was no final decision to commit the crime in the first place. *Id.* at 939–40. It makes little sense to read *Martinez-Martinez* as setting forth a rule far broader than necessary to resolve the dispute before it. *See, e.g.*, *Hamad v. Gates*, 732 F.3d 990, 1000 (9th Cir. 2013) ("[A]s we have long held, the 'language of the court must be read in the light of the facts before it.'") (quoting *United States v. Muckleshoot Indian Tribe*, 235 F.3d 429, 433 (9th Cir. 2000)).

And if the test in *Martinez-Martinez* were construed in an especially strict way, it would make the § 2X1.1(b) three-level reduction all but required except in the most extreme circumstances in which the defendant had done nearly everything possible to complete the offense. We do not read *Martinez-Martinez* to go so far. That would not be a fair reading of the "about to complete" standard in § 2X1.1(b). And it would fail to respect that provision's basic objective, which is to ensure that greater leniency is accorded those who are arrested "well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense." U.S.S.G. § 2X1.1, comment. (backg'd). It is not necessary to read *Martinez-Martinez*'s stated test in a way that conflicts with § 2X1.1(b), and we do not do so today.

Aligning the test in *Martinez-Martinez* with the Guidelines commentary that it referenced also makes its rule consistent with how other circuits have approached the

"about to complete" issue. *See, e.g.*, *United States v. Lutchman*, 910 F.3d 33, 39 (2d Cir. 2018) ("The 'relevant question' in determining whether th[e] reduction applies is 'whether the conspiracy ripened into a substantially completed offense or came close enough to fruition.'") (quoting *United States v. Downing*, 297 F.3d 52, 62 (2d Cir. 2002)); *United States v. Jones*, 791 F.3d 872, 874 (8th Cir. 2015) (asking "whether it was reasonably certain that Jones would have committed the robbery and subsequent drug trafficking but for some factor beyond Jones's control" (quotations and brackets omitted)); *Brown*, 74 F.3d at 893 ("[C]ourts have upheld the denial of a reduction even though a defendant had not reached the 'last step' before completion of the substantive offense."); *United States v. Chapdelaine*, 989 F.2d 28, 36 (1st Cir. 1993) ("In our view, the guideline reflects a policy decision that conspiracies and attempts should be treated like substantive offenses for sentencing purposes if the substantive offense was nearly completed, and the defendant did not voluntarily withdraw."); *id.* (describing the § 2X1.1(b) reduction as one "available for conspiracies and attempts that have not progressed very far").

B

Finally, any argument that the failure of the Hobbs Act robbery offense was due to circumstances *within* the conspirators' control, rather than an "event *beyond* their control," U.S.S.G. § 2X1.1(b)(2), is unavailing. It was within the conspirators' control to go to Wen's house. But it was beyond their control that Wen did not know the DFI passcodes. Courts have so found in similar situations in which conspirators counted on third parties having certain information that it turned out they lacked. *See, e.g.*, *United States v. Martinez*, 342 F.3d 1203, 1208 (10th Cir. 2003)

("The plot was unsuccessful solely because the bank president and his kidnapper were unable to operate the safe's combination lock, an event clearly outside the participants' control."); *United States v. Toles*, 867 F.2d 222, 223 (5th Cir. 1989) (per curiam) (rejecting challenge to the denial of a § 2X.1(b) reduction where a robbery was thwarted when the bank teller lacked the keys to her cashbox).

Le nonetheless argues that Wen's lack of knowledge of the codes was within the conspirators' control because it was the conspirators' poor planning that led them to "foolishly target[] the wrong person." But this logic stretches the phrase "event beyond their control" well past its breaking point. Le's reasoning, if adopted, would mean that virtually any event that interrupts an offense could be reframed as "within" the conspirators' control—the product of their bad methods, mistakes, or ineptitude. A robbery plot that is unsuccessful because the police had a wiretap on a defendant's phone could be rebranded as within the defendant's control because he should have suspected the wiretap and thus avoid communicating with his co-conspirators in person. With hindsight, there is always something conspirators could have done to avoid whatever impeded their plan.

We do not think it would be appropriate to recharacterize external circumstances as within a defendant's control when they are most naturally regarded as beyond it. *See Dosen*, 738 F.3d at 878 (rejecting the notion of recasting the defendant's actions as "comical failures," which "would disserve the aims of criminal justice"). Doing so would mean that in other past cases, the defendants could have simply recharacterized the events at issue to place the blame on themselves, thus making the disrupting circumstances supposedly "within" their control. *See, e.g.*, *id.* at 875, 878

(district court did not err in refusing to grant the § 2X1.1 reduction where the defendant was unable to complete the robbery of a truck because the conspirators lost the truck in traffic); *Chapdelaine*, 989 F.2d at 35 (district court did not err in refusing to grant § 2X1.1 reduction when the defendant was unable to rob a Wells Fargo truck because it departed earlier than expected). We do not read § 2X1.1 to require a three-level reduction through the rote recasting of every unforeseen circumstance as an error of planning.

**AFFIRMED.**

BERZON, Circuit Judge, dissenting:

I respectfully dissent. The majority opinion misconstrues the meaning of the relevant Sentencing Guideline and departs from our precedent. I would reverse, vacate Le's sentence, and remand to the district court for resentencing.

## I

Le was convicted as part of a conspiracy to rob an electronics business, Diamond Flower Electric Instruments ("DFI"). The conspiracy involved at least a dozen co-conspirators, divided between two teams. The first team, or "entry" team, was to invade a home the conspirators thought to be that of DFI's owner and obtain from the owner the alarm codes to the business. The second team, or "transport" team, of which Le was a member, awaited the home invasion team's report on the alarm codes at the Granada Inn, a motel located roughly ten miles from DFI. The plan was: if the entry team was able to obtain the alarm codes, the transport team would then drive to the business, access the building using the codes, and find and steal computer chips.

But the conspirators made a fatal mistake: they selected for invasion the home not of DFI's owner but of Zhou Shi Wen, a janitor and forklift operator. Wen was tied up, brutally tortured, and interrogated. But he did not know the alarm codes and so could not provide them. When the entry team realized their mistake, the conspirators called off the robbery. Le and his team never left the motel room, and so never drove to DFI, attempted to access it, or found and stole the computer chips. Law enforcement learned of the abandoned conspiracy over a year after the fact while interviewing one of the co-conspirators about another matter.

## DISCUSSION

### I

Le argues that he was entitled at sentencing to a three-level downward adjustment to his base offense level under U.S.S.G. § 2X1.1(b)(2). That section provides:

> If a conspiracy, decrease by 3 levels, unless [1] the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or [2] the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

U.S.S.G. § 2X1.1(b)(2).

The majority addresses only the second clause of § 2X1.1(b)(2). But the two clauses are interconnected, as the

second clause's "such acts" phrase refers to the first clause. "The word 'such' usually refers to something that has already been described or that is implied or intelligible from the context or circumstances." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 766 (2023) (internal quotation marks omitted). More specifically, "when 'such' precedes a noun it refers to a particular antecedent noun and any dependent adjective or adjectival clauses modifying that noun." 2A Norman J. Singer & Shambie Singer, *Sutherland Statutory Construction* § 47:33 n.1 (7th ed. 2023). This rule of syntax indicates that "all such acts" in the second clause refers to "all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense." U.S.S.G. § 2X1.1(b)(2).

The upshot is that Le can be denied a three-level reduction only if he and his co-conspirators were "about to complete" "*all* the acts the conspirators believed necessary on their part for the successful completion of the substantive offense" *and* they were stopped from completing those acts by events "beyond their control" and "similar" to "apprehension." *See id.* (emphasis added). Because I believe none of the conditions for § 2X1.1(b)(2)'s second prong is met here, Le should have been granted a three-level reduction. In not granting the reduction, the district court committed clear error.

## II

The text of § 2X1.1(b)(2) and this Court's past interpretation of that section of the Sentencing Guidelines dictate application of the three-level reduction here.

Someone who is "about to" do something is "on the verge of" doing it or "intending or preparing immediately to" do it. *See About*, Merriam-Webster Dictionary (2023);

*About*, Oxford English Dictionary (2024). Le and his co-conspirators cannot be said to have been "on the verge of" completing "*all* the acts [they] believed necessary" to successfully complete the Hobbs Act robbery of DFI. U.S.S.G. § 2X1.1(b)(2) (emphasis added). At the time the robbery scheme was abandoned, several critical steps remained to be completed. *See* Majority Op. at 9. Even assuming that the entry team had been able to obtain the correct alarm codes—something they were never close to doing—the transport team would have then needed to drive ten miles to DFI, enter the business undetected using the alarm codes, and successfully locate and remove the computer chips. With these various steps remaining, Le and his co-conspirators were not "on the verge of" completing "all the acts" needed to accomplish the robbery.

Our decision in *United States v. Martinez-Martinez*, 156 F.3d 936 (9th Cir. 1998), precludes any other conclusion. *Martinez-Martinez* held:

> [U]nless the remaining steps to be taken in the commission of a crime are so insubstantial that the commission of the substantive offense is inevitable, barring an unforeseen occurrence that frustrates its completion, the conspirators are *not* about to complete the requisite acts and the defendant must be granted the three point reduction.

156 F.3d at 939.

The majority glosses over *Martinez-Martinez*'s holding, referencing the commentary to the Guidelines. Majority Op. at 13–14. But the majority has this analysis backwards. *Martinez-Martinez* provides this Court's interpretation of

§ 2X1.1(b)(2) and the commentary, not the other way around.

Furthermore, this Court's holding in *Martinez-Martinez* was pellucid. *Martinez-Martinez* held that the conspirators there were not "about to complete" the substantive offense, because "[c]ompletion of the crime was not inevitable" or a "foregone conclusion." *Id.* at 940. Because there were "steps remaining to be taken before the conspirators could complete the substantive offense that were not insubstantial," the defendant in *Martinez-Martinez* was entitled to a three-level reduction under § 2X1.1(b)(2). *Id.* Both this Court and other circuits have subsequently reiterated *Martinez-Martinez*'s interpretation of § 2X1.1(b)(2). *See, e.g.*, *United States v. Koziol*, 993 F.3d 1160, 1186 (9th Cir. 2021); *United States v. Susany*, 893 F.3d 364, 367 (6th Cir. 2018); *United States v. Downing*, 297 F.3d 52, 62–63 (2d Cir. 2002).

Without a doubt, the *Martinez-Martinez* standard was not met here. The remaining steps were substantial—driving ten miles, successfully using the access codes, finding and stealing the computer chips. At any point, the conspirators could have changed their minds and abandoned the scheme. There was nothing "inevitable" about their continuing it.

The majority briefly attempts to distinguish *Martinez-Martinez* from this case because here, unlike in *Martinez-Martinez*, the *decision* to try to steal the computer chips was a "done deal." Majority Op. at 11. *Martinez-Martinez* focused on the lack of approval from the "boss" because that was *a* "not insubstantial" step that needed to be taken before the substantive offense could be completed. 156 F.3d at 940. But, as the majority recognizes, Majority Op. at 12, *Martinez-Martinez* did not hold that the decision to carry out

a crime determines whether a conspiracy is on the verge of completion.  Nor would such a rule make sense.  The conspirators here, for example, had decided to rob DFI before they identified the supposed owner of the business, much less invaded his home.  Few would contest the application of § 2X1.1(b)(2) had Le been arrested at that early point.

Additionally, the majority reads into *Martinez-Martinez* an instruction that "the steps that remain must be compared against the steps that were completed."  Majority Op. at 12.  But both *Martinez-Martinez*'s focus on the "remaining steps to be taken" and the Guideline's use of "about to" direct our attention to what is left to be done not what steps have already been taken.  Other circuits to address the application of § 2X1.1(b)(2) have similarly focused on the steps that remain to be completed.  *See, e.g.*, *Susany*, 893 F.3d at 368 ("[T]he Defendants needed to execute multiple intervening steps to commit the substantive offense. . . . Under these circumstances, [the defendant] and his co-conspirators were not 'about to complete' the substantive offense with which they were charged."); *United States v. Egemonye*, 62 F.3d 425, 429 (1st Cir. 1995) ("Effectively, [§ 2X1.1] gives the defendant a three-level discount if he is some distance from completing the substantive crime."); *United States v. Sung*, 51 F.3d 92, 95–96 (7th Cir. 1995) (holding that whether § 2X1.1 applies "depends on how close the defendant came to completing [the] crimes").

As *Martinez-Martinez* makes clear, given the multiple remaining steps here, the conspirators were not "about to complete" "all the acts" planned toward accomplishing the Hobbs Act robbery.

## III

Application of § 2X1.1(b)(2)'s three-level reduction is additionally warranted here because the robbery of DFI failed due to circumstances within the conspirators' control and in no way "similar" to apprehension. *See* U.S.S.G. § 2X1.1(b)(2). The failure of the conspiracy stemmed from the conspirators' mistake in identifying Wen as DFI's owner. Although Wen's lack of knowledge of the alarm codes was not in the conspirators' control, the choice of Wen as a victim was.

Application of the three-level reduction here does not hinge on what the conspirators "could have done to avoid whatever impeded their plan." Majority Op. at 16. Instead, it is informed by what the conspirators did in fact do that brought about the end of the conspiracy. The conspirators waited outside DFI for the last person to leave, assuming, for no apparent reason, that whoever left the business last would be the owner. They selected Wen as the target for their home invasion on that basis. Coming up with a sensible scheme for determining who the owner was and where he lived, instead of the baseless one adopted, was certainly within the conspirators' control.

Further, the mistake made was in no way "similar" to apprehension. It involved no official action, nor any interference by a third party with the criminal scheme once it was underway. Instead, there was a mistake at the outset, a mistake for which the conspirators, no one else, were fully responsible.

The cases involving "similar situations" cited by the majority bear no resemblance to this circumstance. *See* Majority Op. at 15–16. As one example, in *United States v. Toles*, 867 F.2d 222 (5th Cir. 1989), a bank robbery case, the

Fifth Circuit held that the conspiracy was stopped on the verge of completion when "the bank teller, the victim, successfully prevented the completion of the robbery by claiming to be unable to unlock the cash box." 867 F.2d at 223. The government does not contend here that Wen took purposeful action to thwart the conspiracy; the problem was that he was the wrong person to provide the code, because of the conspirators' own mistake.

The other case cited by the majority, *United States v. Martinez*, 342 F.3d 1203 (10th Cir. 2003), involved an attempted bank robbery that failed "solely because the bank president and his kidnapper were unable to operate the safe's combination lock," which *Martinez* held was "clearly outside the participants' control." 342 F.3d at 1208. *Martinez* might have been a partial analog to this case (on the interruption prong only) if the entry team had correctly identified DFI's owner. But the event that ended the conspiracy was not the business owner's inability to remember the codes or operate the alarm system, but the conspirators' mistaken identification of Wen as the owner. Because this mistake was within the conspirators' control, Le is entitled to application of § 2X1.1(b)(2).

\* \* \*

Both the district court's sentencing order and the majority opinion repeatedly invoke the brutal actions of the conspirators inside Wen's home. To be sure, the pain and anguish inflicted in service of Le and his co-conspirators' scheme were serious criminal actions, which should be—and were—severely punished. At Le's sentencing, the district court imposed a six-level enhancement for Le's co-conspirators' use of a gun in guarding Wen and two two-level enhancements for their restraining and beating Wen.

The denial of a three-level reduction under § 2X1.1(b)(2) is not an appropriate vehicle for taking account of violent acts at sentencing.  Instead, § 2X1.1(b)(2) is a recognition of the principle that "conspirators thwarted before their conspiracy's aim is achieved should be punished more heavily the greater the probability that the conspiracy would have resulted in [the] substantive offense [planned]." *United States v. Dosen*, 738 F.3d 874, 878 (7th Cir. 2013).  Where, as here, a conspiracy terminates, through events in the conspirators' control, several steps before the completion of the substantive offense that was the conspiracy's aim, § 2X1.1(b)(2)'s three-level downward adjustment applies.  Because I believe the district court committed clear error in its Guidelines calculation, I would reverse, vacate Le's sentence, and remand for resentencing.  I therefore respectfully dissent.